**MAURICE PINCOFFS COMPANY,**
Plaintiff,

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee,**

**American Home Assurance Company, Defendant-Appellant.**

**No. 30760**
**Summary Calendar.**\*

United States Court of Appeals, Fifth Circuit.

July 19, 1971.

Rehearing Denied Sept. 14, 1971.

\* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

See publication Words and Phrases
for other judicial constructions and
definitions.

———◆———

J. P. Forney, Jr., Houston, Tex., for defendant-appellant; Eastham, Watson, Dale & Forney, Houston, Tex., of counsel.

James E. Ross, Houston, Tex., for plaintiff.

Sam W. Cruse, Houston, Tex., for defendant-appellee; Fullbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this declaratory judgment action, the district court was called upon to determine the meaning of the word "occurrence" in an insurance contract. The court found only a single occurrence under the policy in certain sales of bird seed, which was contaminated at one source prior to sales to several different buyers, 315 F.Supp. 964. We hold that there were several occurrences and reverse.

Since the case was submitted below on a stipulation, there is no dispute as to the material facts.

In January, 1968, Maurice Pincoffs Company imported 110,000 pounds of canary seed from Argentina. The seed, in 110-pound bags, was unloaded in Houston on January 21 and 22. Between January 24 and February 2 the seed was sold, still in its original bags, to eight different feed and grain dealers in Texas and Oklahoma. These dealers sold the seed to owners of birds. The seed was apparently contaminated with Aldrin, a chemical insecticide toxic to birds, and many birds were killed. The owners of the poisoned birds made claims against the dealers. The dealers, in turn, made claims against Pincoffs.

Pincoffs had two liability insurance policies in effect at this time, and except for the controversy herein, it is admitted that both policies otherwise afforded protection to Pincoffs against the aforesaid claims. Primary coverage was afforded by a St. Paul Fire and Marine Insurance Company policy with a single occurrence limit of $50,000, and an aggregate limit of $100,000. A so-called umbrella liability policy, issued by American Home Assurance Company, provided coverage for excess liability after exhaustion of the limits of the St. Paul policy.

St. Paul compromised and settled with forty-six claimants, paying out a total of $50,000. There still remain outstanding claims of a number of parties which total in excess of another $50,000. St. Paul has taken the position that its policy limits are exhausted, because there was but a single occurrence under the terms of its policy. American has taken

the position that there were multiple occurrences, and that its policy does not take over until St. Paul has paid out another $50,000, to total exhaustion of the $100,000 limits under its multiple occurrence coverage. To resolve the conflict, Pincoffs brought this action for declaratory relief against both companies, and takes no position on this appeal.

This is a diversity case controlled by Texas law. The fundamental issue is whether there was one "occurrence" of liability or more than one "occurrence" under St. Paul's policy.[1] The definition in the policy provides as follows:

> " 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The district court thought that it was the contamination of the seed that was the occurrence to which the policy referred, because it was the contaminated seed that caused the damage. There being no evidence of multiple incidents of contamination, then the court concluded that the contamination was the result of one occurrence.

We think that the "occurrence" to which the policy must refer is the occurrence of the events or incidents for which Pincoffs is liable. It was the sale of the contaminated seed for which Pincoffs was liable. Although the cause of the contamination is not clear, it seems apparent that Pincoffs received the seed in a contaminated condition and did not itself contaminate the seed. However, it was not the act of contamination which subjected Pincoffs to liability. If Pincoffs had destroyed the seed before sale, for instance, there would be no occurrence at all for which the insured would

be liable. But once a sale was made there would be liability for any resulting damages. It was the sale that created the exposure to "a condition which resulted in property damage neither expected nor intended from the standpoint of the insured," under the definition of the policy. And for each of the eight sales made by Pincoffs, there was a new exposure and another occurrence. O. M. Franklin Serum Co. v. C. A. Hoover, 410 S.W.2d 272 (Tex.Civ.App.1966), writ of error refused, n. r. e., 418 S.W.2d 482 (Tex.1967).

Under the reasoning urged upon us by St. Paul, if there were multiple incidents of contamination of the same seed by persons other than Pincoffs before sale, then if Pincoffs made one sale for one bird which succumbed after one meal, there would be multiple occurrences to which the higher policy limits would apply. We think this is facially unsound and contrary to the plain meaning of the policy.

With our view of this case, i. e., that it was the sale which keyed the occurrence to which the policy refers, it appears clear that the cases relied upon by St. Paul were misapplied by the court below.

St. Paul-Mercury Indemnity Co. v. Rutland, 225 F.2d 689 (5th Cir. 1955) involved a collision between a truck and a freight train. The collision resulted in damage to sixteen separate freight cars belonging to fourteen different owners. We held that there had been but a single "accident" within the meaning of the truck owner's insurance policy. The collision of the truck with the train was the single event which made it one accident from the insured's standpoint.

---

1. This policy contained the following limits of liability:

> "Property Damage—each occurrence $50,000"

> "Property Damage—aggregate $100,000"

"Coverage B—the total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limits of Property Damage stated in the Declarations as applicable to 'each occurrence'."

Barrett v. Iowa National Mutual Ins. Co., 264 F.2d 224 (9th Cir. 1959), Denham v. LaSalle-Madison Hotel Co., 168 F.2d 576 (7th Cir. 1948), cert. den., 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415, and Tri-State Roofing Company v. New Amsterdam Casualty Co., 139 F.Supp. 193 (W.D.Pa.1955) all involved fires which caused damage to several different claimants. These cases held that the single accident policy limits applied because it was the single fire which caused liability for all of the damages. It is clear that another fire would be another accident.

In Allied Grand Doll Mfg. Co. v. Globe Indemnity Co., 15 A.D.2d 901, 225 N.Y. S.2d 595 (1962), the liability of the insured resulted from the fact that a water faucet had been left running and water had damaged the property of other tenants in the building. The liability of the insured could be traced to a single act for which the policyholder was legally responsible for the multiple damage claims. It was held that there was only one accident.

It is true that the damage to the birds resulted from the contamination of the bird seed. But Pincoffs' liability resulted from the event of its sale of the seed. Thus, it is the sale of contaminated seed, not the contamination, that must be compared with the collision, the fire and the running water faucet in following the precedent of the above cases.

There being eight sales, there were eight separate occurrences within the meaning of the St. Paul policy. With $50,000 coverage of Pincoffs' liability for the damages flowing from each sale, St. Paul would have to pay an aggregate of $100,000 under its policy before the American coverage would take effect. See, Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5th Cir. 1949); Elston-Richards Storage Co. v. Indemnity Ins. Co. of North America, 194 F.Supp. 673 (W.D.Mich.1960); Arthur A. Johnson Corp. v. Indemnity Ins. Co. of North

America, 6 A.D.2d 97, 175 N.Y.S.2d 414 (1958).

Reversed and remanded for the entry of a judgment consistent with this opinion.

Reversed and remanded.