This appeal is from the Circuit Court of Madison County granting judgment in favor of Safeco Insurance Company and against United States Fire Insurance Company for damages in excess of Safeco's coverage for losses sustained from water leakage through insured's roof onto its leasee's merchandise. We reverse and remand.
The cause was tried and submitted to the court on the pleadings, stipulation of facts and issues, and testimony of witnesses taken by deposition. When the cause is tried in this manner, this court rules on the evidence as well as the application of the law, and there is no presumption in favor of the lower court's finding of fact. Smith v. Dalrymple, 275 Ala. 529, 156 So.2d 622 (1963); Knowles v. Knowles, 246 Ala. 228,20 So.2d 200 (1949).
The facts stipulated by the parties were presented as follows:
"AGREED SUMMARY OF UNDISPUTED FACTS
 "United States Fire and Safeco are insurance companies which were authorized and qualified to write insurance in the State of Alabama at all times material to this action. James M. Folmar and Emory M. Folmar d/b/a Folmar Enterprises (hereinafter referred to as `Folmar') own the premises located at 4710 University Drive, N.W., Huntsville, Alabama. On or about the 28th day of August, 1969, Folmar leased the premises to F.W. Woolworth (hereinafter referred to as `Woolco'). Woolco operates on the premises a retail department store marketing various types of merchandise. *Page 845 
 "Folmar has two insurance policies which provide coverage in the event that losses are sustained by Woolco as a result of water leaking through the roof. The first insurance policy is the primary insurance policy. The primary insurance policy provides coverage for losses sustained up to One Hundred Thousand and no/100 dollars ($100,000.00) for each occurrence, with aggregate coverage limits up to Three Hundred Thousand and no/100 Dollars ($300,000.00). The primary insurance coverage is provided to Folmar by Safeco. The second insurance policy is an excess, or umbrella, insurance policy. The excess insurance policy provides coverage for losses which exceed One Hundred Thousand and no/100 Dollars ($100,000.00) for each occurrence. The excess insurance coverage is provided to Folmar by United States Fire.
 "Since the time of its construction, there have been several problems with water leaking through the roof of the Woolco premises. The water leakage pertinent to this action began on or about November 23, 1979. In January of 1980, Folmar entered into a contract with Bob Hataway d/b/a Bama Roofing Company for re-roofing the entire roof. In March of 1980, additional damage caused by rainfall was sustained by Woolco when Bama Roofing Company failed to effectively cover a portion of the roof on which it was working. Following this incident, Folmar elected to have its own personnel complete the roofing job. The re-roofing was supposed to have been completed on or about August 14, 1980. However, additional water damage was sustained by Woolco in November of 1980. The roof repairs had not been completed by November of 1980 in that vent drains and pitch cups had not been installed. Between November 23, 1979, and August 15, 1980, Woolco sustained damages in the following amounts: Ninety Thousand One Hundred Thirty Six and 42/100 Dollars ($90,136.42) for damage to merchandise; Seventeen Thousand Five Hundred Thirty Seven and 65/100 Dollars ($17,537.65) for loss of earnings; Twenty Nine Thousand Seven Hundred Five and 15/100 Dollars ($29,705.15) for additional salaries and additional expenses for water control. The total damages sustained by Woolco during this period was One Hundred Thirty Seven Thousand Three Hundred Seventy Nine and 22/100 Dollars ($137,379.22).
 "The merchandise which was damaged was sold for salvage on or about September 24, 1980. The total amount realized from the sale was Sixteen Thousand Two Hundred Sixty Nine and 93/100 Dollars ($16,269.93), which amount was paid to Woolco and reduced Woolco's total loss to One Hundred Twenty One Thousand One Hundred Nine and 29/100 Dollars ($121,109.29). The arrangements for the salvage sale were made by Woolco and Safeco. Safeco treated the events described above as one occurrence within the meaning of its policy of insurance with Folmar. Accordingly, on or about September 17, 1980, Safeco Insurance Company issued its draft in the amount of One Hundred Thousand and no/100 Dollars ($100,000.00) to Woolco. Safeco has refused to make any further or additional payments on this loss.
 "United States Fire was notified of the events described in this pre-trial order by Safeco on or about August 15, 1980. On March 2, 1981, United States Fire issued a draft in the amount of Twenty One Thousand One Hundred Nine and 29/100 Dollars ($21,109.29) to Woolco. This payment was made pursuant to an agreement that United States Fire was reserving any rights and causes of action which it might have against Safeco." (emphasis added)
The question presented to this court is whether the additional damage caused by rainfall in March resulting from Bama Roofing's failure "to effectively cover a portion of the roof on which it was working" was part of a single occurrence as defined by the insurance policy with Safeco. The pertinent section of the policy defines "one occurrence" as follows: *Page 846 
"LIMITS OF LIABILITY
 For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."
This court has not defined the phrase "one occurrence," and under the principles of contract and insurance law, this court must give it the meaning intended by the parties to the policy (i.e., the definition in the policy). In Alabama Farm BureauMutual Cas. Ins. Co. v. Goodman, 279 Ala. 538, 541,188 So.2d 268 (1966), this court stated:
 "Contracts of insurance, like any other contract, must be construed to give effect to the intention of the parties. If the terms are clear and unambiguous, there is no need for construction. Ambiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist. Michigan Mutual Liability Co. v. Carroll, 271 Ala. 404, 123 So.2d 920, and cases there cited."
Appellant argues that the terms "substantially" and "general" are ambiguous. An ambiguous term is one which has "duplicity, indistinctiveness, or uncertainty of meaning." Black's Law Dictionary (5th ed. 1979). Although these terms are broad and judicial application of them in any given case is dependent upon the findings of fact, this alone does not make them ambiguous. This court does not find the terms ambiguous and will construe them with their common meaning and import.Goodman, supra.
Safeco argues that there was only one occurrence because water was dripping inside the store every day and because all of the damage was caused by water dripping through the ceiling. In his deposition, the assistant manager of the store made it quite clear that the leaks were all over the store and dripped every day he was in the store. However, the continuous nature of the dripping water is only one factor in analyzing whether or not there was only one occurrence.
U.S. Fire argues that there were two occurrences because some of the damage resulted from negligent acts of the roofing crew.
Herein lies the question, as posed by Safeco's definition of the term "occurrence." Did "substantially the same general conditions" exist from November 23, 1979, to August 15, 1980?
There was a condition which existed continuously. The roof of the store had cracks and holes, and the ceiling dripped water onto the floor and the merchandise. The dripping resulted from both rainwater accumulation and condensation. It is irrelevant whether the ceiling dripped every single day from November to August. In Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,676 F.2d 56, 61 (3rd Cir. 1982), the third circuit stated:
 "The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. As long as the injuries stem from one proximate cause there is a single occurrence. Champion Int'l. Corp. v. Continental Casualty Co., 546 F.2d 502, 505-506 (2d Cir. 1976), cert. denied, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Indeed, the definition of the term `occurrence' in the Appalachian policy contemplates that one occurrence may have multiple and disparate impacts on individuals and that injuries may extend over a period of time [emphasis added]."
The definition in the policy cited in Appalachian is very similar to that in the policy in the instant case, and like application of it should be made.
The question then becomes: Did the injuries (damages) stem from one proximate cause?
This "cause analysis" was adopted in an early case addressing the application of a similar clause limiting liability in "one *Page 847 
occurrence." In Truck Ins. Exchange v. Rohde, 49 Wn.2d 465,471, 303 P.2d 659, 662 (1956), the Washington Supreme Court asked if "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage."
Since the Rohde decision the majority of courts have adopted the "cause" theory of analysis. See, Bartholomew v. InsuranceCo. of North America, 502 F. Supp. 246 (1980); Annotation 55 A.L.R.2d 1300 (1957). One state court explained further that if the cause is interrupted or replaced by another cause, the chain of causation is broken and more than one accident or occurrence has taken place." 8A Long, Insurance Law andPractice § 4891.25 at 18 (1981) (citing Olsen v. Moore56 Wis.2d 340, 202 N.W.2d 236 (1972)).
In the case at hand, the negligent act of the roofing crew was a separate, intervening cause. The damage caused by the roofing crew's failure to adequately cover the exposed portion of the roof was not proximate to the cracks and holes in the other areas of the roof; nor did the latter cause the former. The lack of a proximate causal link between the two is evident if we assume, hypothetically, that the roof had no cracks or holes prior to the re-roofing attempt by Bama Roofing. The resulting damage from the negligent failure to cover the exposed area would clearly have no relation to the condition of the roof prior to the repair attempt. Furthermore, the two events are easily distinguishable in time and space, and one event did not cause the other. For these reasons, such cases asSaint Paul-Mercury Indemnity Co. v. Rutland, 225 F.2d 689 (5th Cir. 1955), and Tri-State Roofing Co. v. New Amsterdam CasualtyCo., 139 F. Supp. 193 (W.D.Pa. 1955), do not persuade this court that one occurrence had taken place in the instant case.Rutland, Tri-State, and their progeny involve fact situations where a single incident or simultaneous incidents resulted in multiple injuries or damages. To the contrary, these cases persuade this court that two occurrences have taken place.
Furthermore, this court is not persuaded by cases addressing the application of similar clauses in insurance policies to claims for flood damage. The federal law speaking to what constitutes a single occurrence from flood water is very specialized and has little application to the case at hand. Seegenerally, Miller v. Macy, 526 F. Supp. 46 (D.Mass. 1981).
For the foregoing reasons, we reverse the lower court decision and remand this cause for assessment of damages.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.