**HOME INDEMNITY COMPANY,**
**Plaintiff-Appellant,**

v.

**CITY OF MOBILE, et al.,**
**Defendants-Appellees.**

**No. 83–7664.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 26, 1984.

---

A. Danner Frazer, Jr., Mobile, Ala., Eugene D. Martenson, Rebecca L. Shows, Birmingham, Ala., for plaintiff-appellant.

G.B. McAtee, Mobile, Ala., for Barrett, Dumas, Whitehead, Watt & Tuberville.

Theodore L. Hall, Mobile, Ala., for William M. Coker.

William H. Brigham, Mobile, Ala., for City of Mobile.

Russell S. Terry, Mobile, Ala., for Richard L. and Marion S. Frank, M.W. Frank, Brown & Brown, Inc., and Brownfield Inv. Corp., Inc.

Before HILL and HENDERSON, Circuit Judges and WISDOM *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

The sole issue presented in this case is the meaning of the term "occurrence" as used in a comprehensive, general liability insurance policy issued by plaintiff/appellant Home Indemnity Company (Home) to the defendant/appellee City of Mobile (City).

This case arose as a result of over 200 lawsuits filed against the City of Mobile after major rains on April 13, 1980, May 16–17, 1980 and May 5–6, 1981. During and following these rains, overflows occurred at various points in the surface wa-

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-tion.

ter drainage system maintained by the City, and extensive flood damage resulted. In suits filed in state court, property owners alleged that the City was liable for the flood damage due to its negligence in the planning, construction, operation, and maintenance of its surface water drainage system.

Prior to the flooding, Home issued to the City an insurance policy indemnifying the City against property damage liability up to $100,000 for any one occurrence.[1] The City apparently sought this policy to protect itself from potential liability as a result of 1975 Alabama legislation which partially waived sovereign immunity, permitting damage recoveries against governmental entities up to $100,000 for property damage "arising out of any single occurrence." Ala.Code § 11–93–2.

The terms of the policy issued by Home provide that:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

(a) bodily injury or

(b) property damage

to which this insurance applies, caused by *an occurrence* (emphasis added).

This per occurrence limit is defined as follows:

The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as a result of *any one occurrence* should not exceed the limit of property damage liability stated in the schedule as applicable to *"each occurrence."*

"Occurrence" is defined in the policy as an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damages neither expected nor intended from the standpoint of the insured.

In addition, the policy states that:

for the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of the continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of *one occurrence.*

In November, 1980, Home filed this suit in federal district court seeking a declaratory judgment as to the meaning of the term "occurrence" in the policy. Home argued (and still contends) that each separate rainfall and consequent flooding is "one occurrence;" and that since there were three separate rainfalls that resulted in flooding, it is liable for only three "occurrences." The City and the numerous flood victims maintained (and still maintain) that "occurrence" should be defined in terms of the resulting damage to each claimant's property, so that each incident of flooding to the property of each individual property owner is an "occurrence."

The district court issued its final order interpreting the policy on December 1, 1982, and entered a final judgment for the defendants based on that order on November 3, 1983. The court held that the term "occurrence" as used in this policy means "the occurrence of events or incidents for which the City is liable," stating further that the policy extends $100,000 in coverage to the City "for each occurrence which results in the City becoming legally obligated to pay damages for property damages." The court noted that what creates liability against the City is not the rainfall and flooding itself, but the "intervening negligence of the City" in constructing or maintaining its drainage system. Home brought this appeal from that judgment.

We agree with the above statements of the district court, although we clarify any portions of the court's order which could be construed as indicating that the damages to each individual property owner are separate "occurrences."

■ This court is bound by Alabama law in interpreting this insurance contract. We

---

**1.** The City's yearly premium payments on this policy for 1981 and 1982 were approximately $307,000.

must give to the terms of the policy the meaning intended by the parties to the policy. *United States Fire Insurance Co. v. Safeco Insurance Co.*, 444 So.2d 844, 846 (Ala.1983).

In the recent case of *United States Fire Insurance,* the Alabama Supreme Court adopted the "cause" theory of analyzing the meaning of an "occurrence" in an insurance policy, rather than the "effect" or "result" theory. In that case, water had leaked through the roof of a building, damaging the merchandise of the lessee occupying the building. Subsequently, the lessee sustained additional damages by rainfall when the roofing company working on the roof failed to effectively cover a portion of the roof on which it was working. The lessor had two insurance policies: one providing primary coverage for losses up to $100,000 per occurrence; and a second, "umbrella" policy covering excess losses. The definition of "one occurrence" in the primary insurance policy was identical to the definition in our present case.[2] The primary insurer refused to pay more than $100,000, asserting that all of the water damage resulted from one "occurrence."

The issue presented to the Alabama Supreme Court was whether the additional damage caused by the later rainfall, resulting from the roofing company's negligence, was part of a single occurrence as defined by the insurance policy. The court first set out the applicable standard—"*[a]s long as the injuries stem from one proximate cause* there is a single occurrence." 444 So.2d at 846. Thus, a single occurrence may result in multiple injuries to multiple parties over a period of time; but if one cause is interrupted and replaced by another intervening cause, the chain of causation is broken and more than one occurrence has taken place. *Id.* at 846–47. Based on the facts of the case, the court then determined that two separate occurrences had taken place, because the additional damage was caused by a "separate, intervening

cause" (the negligence of the roofing crew) rather than the prior condition of the roof. *Id.* at 847. In addition, the two instances of water damage were found to be easily distinguishable in time and space; and one event did not cause the other. *Id.* In sum, the initial water damage was caused by the "occurrence" of the leaky roof, and the later damage was caused by the "occurrence" of the negligence of the roofing crew.

Although it did not deal with Alabama law, *Maurice Pincoffs Co. v. St. Paul Fire and Marine Insurance Co.*, 447 F.2d 204 (5th Cir.1971), is another instructive case. In *Pincoffs,* the Pincoffs company imported 110,000 pounds of canary seed which was sold to various dealers who then sold the seed to bird owners. The seed was contaminated and killed many birds. St. Paul provided primary liability insurance coverage with a single occurrence limit of $50,-000 and an aggregate limit of $100,000. The definition of the term "occurrence" in the policy was nearly identical to the definition in the policy issued to the City of Mobile. The district court thought that it was the contamination of the seed that was the occurrence to which the policy referred, because it was contaminated seed that caused the damage. However, the Fifth Circuit reversed, stating:

We think that the "occurrence" to which the policy must refer is *the occurrence of the events or incidents for which Pincoffs is liable.* It was the *sale* of the contaminated seed for which Pincoffs was liable.... Pincoffs received the seed in a contaminated condition and did not itself contaminate the seed. However, it was not the act of contamination which subjected Pincoffs to liability. If Pincoffs had destroyed the seed before sale, for instance, there would be no occurrence at all for which the insured would be liable. But once a sale was made there would be liability for any resulting damages. It was the sale that created the exposure to "a condition

---

2. Under the heading "LIMITS OF LIABILITY," the policy provided that

> For the purpose of determining the limit of the company's liability, all bodily injuries and

property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

which resulted in property damage neither expected nor intended from the standpoint of the insured," under the definition of the policy. *And for each of the eight sales made by Pincoffs, there was a new exposure and another occurrence.*

*Id.* at 206 (emphasis added).

▮ Like the *Pincoffs* case, our present case involves general liability insurance coverage where the insurer need pay a claim only after the City of Mobile has been held liable for negligently causing damage. As *United States Fire Insurance* indicates, Alabama law requires us to look to the proximate cause of the damages in interpreting an "occurrence." Therefore, we agree with the district court that, under Alabama law, the "occurrence" to which this policy refers is the "events or incidents for which the City is liable;" that is, a single "occurrence" encompasses all damage proximately resulting from each incident or series of incidents of negligence which create the City's liability for flooding.

▮ Under this standard, it is obvious that neither the appellant nor the appellees are correct in their interpretation of "occurrence." The rainfall and flooding itself were not the "occurrences," since those were Acts of God for which the City is not liable; it is the intervening negligence of the City in maintaining its water drainage system which creates the City's liability. Likewise, "occurrence" does not refer to the flooding damages sustained by each individual property, since that interpretation improperly focuses on the *effects* of the events leading to liability, rather than on the *cause* of those events.

We hold that each discrete act or omission, or series of acts or omissions, on the part of the City of Mobile which caused water to flood and damage properties instead of draining properly is a single "occurrence" within the terms of the insurance policy. Thus, if on account of the City's negligence a drain on one street was blocked so that water flooded ten houses on that street, that would be one "occurrence" with a limit of $100,000 applicable to the total damage done to the ten houses. If, at some other location, on account of negligence on the part of the City, a storm sewer spilled over or broke open so that water flooded one house, that would be another occurrence with a total of $100,000 coverage available for the claims arising out of the damage to that house. If, on the other side of the City, on account of the City's negligence, water flooding caused damage to 100 houses, that would be a third "occurrence" and there would be $100,000 in coverage applicable to all property damage proximately resulting from that negligent act.

This interpretation should enable the parties to return to state court to sort out their specific claims. We note that at this stage in the proceedings there apparently has not yet been any determination of negligence or liability against the City of Mobile for flood damages. Once the City's liability to individual property owners is determined, the appropriate court can apply general proximate cause principles to ascertain each "occurrence" for which the Home Indemnity Company must reimburse the City.

As interpreted in this opinion, the judgment of the district court is

AFFIRMED.