**MEAD REINSURANCE,**
**Plaintiff–Appellee,**

**v.**

**GRANITE STATE INSURANCE COMPANY, Third-party-defendant–Appellant**

**and**

**City of Richmond,**
**Defendant–third-party-plaintiff–Appellee.**

No. 87–1804.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1988.

Decided Nov. 23, 1988.

As Amended Jan. 30, 1989.

---

James C. Martin, Crosby, Heafey, Roach & May, Oakland, Cal., for third-party-defendant-appellant.

Louis H. Castoria, Wilson, Elser, Moskowitz, Edelman & Dicker, San Francisco, Cal., for plaintiff-appellee.

Wilbur J. Russ, Russ & Ripley, San Francisco, Cal., for defendant-third-party-plaintiff-appellee.

* Honorable Alan A. McDonald, United States District Judge, Eastern District of Washington, sitting by designation.

Before FERGUSON and LEAVY, Circuit Judges, and McDONALD,* District Judge.

McDONALD, District Judge:

Granite State Insurance Company (Granite) appeals the District Court's granting of the City of Richmond's (City) motion for summary judgment.

Granite contends that the District Court erred in holding that: (1) The underlying actions brought under 42 U.S.C. § 1983 constituted "two occurrences," and (2) Mead Reinsurance's (Mead) "ultimate net loss," pursuant to its insurance policy, included attorney fees and costs incurred in the defense of the City.

The District Court's ruling that there were two occurrences is consistent with case and statutory authority and the facts of the case. Accordingly, this court AFFIRMS the District Court's order.

Based upon *Planet Ins. v. Mead Reinsurance,* 789 F.2d 668 (9th Cir.1986), we hold that "ultimate net loss," as defined in Mead's liability policy issued to the City, does not include attorney fees and costs. Accordingly, this court REVERSES the District Court's order, and holds that Mead's liability limitation is not reduced by attorney fees and costs incurred.

## I.

Summary judgment is granted as a matter of law. Therefore, we review a grant of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). Interpretation of an insurance policy, if no conflicting extrinsic evidence exists, is a matter of law. *Stearns v. Title Ins. & Trust Co.,* 18 Cal. App.3d 162, 95 Cal.Rptr. 682 (1971).[1]

1. The City claims that under California law, the trial court's interpretation of a written contract must be examined under the "clearly erroneous" standard. However, the state law standard of

Both Mead and Granite issued general liability policies to the City from 1979 through 1983. Mead's policy provided for a limit of nine hundred thousand ($900,000) dollars per occurrence for "net claims," which exceeded the City's one hundred thousand ($100,000) dollar self-insured retention limit. Granite's policy provided coverage of five million $5,000,000) dollars per occurrence in excess of the City's and Mead's limits.

The City has incurred liability, or is potentially liable, under 42 U.S.C. § 1983 in twelve lawsuits alleging numerous civil rights violations. The alleged civil rights violations occurred during the period of Mead's and Granite's coverage.

The City's summary judgment motion sought to determine whether the alleged civil rights violations constituted a single occurrence for purposes of establishing the extent of Granite's and Mead's policy coverage. The City and Mead argued that all these lawsuits stem from only one "occurrence" because the City's liability under section 1983 is necessarily premised on a single policy or custom, under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Following this argument, the City would be subject to only one self-insured retention amount of $100,000 per policy period, and Mead would be subject to a single liability limit of $900,000 per policy period.

Granite contends that there was more than a single occurrence because the allegations in the underlying complaint arise from different police actions, resulting in different injuries, and involving different classes of plaintiffs.

The District Court held that the multiple complaints against the City constituted two occurrences. In reaching that decision, the court first examined Mead's policy language, which states that multiple injuries/claims could be considered "one occurrence." The policy defines "one occurrence" as damage arising from "repeated exposure to substantially the same general conditions." Therefore, the policy provides

that an ongoing harmful condition may constitute a "single occurrence."

The District Court then examined whether the section 1983 complaint allege the same municipal policy, and if so, whether such a policy constitutes a "single occurrence." It found that eleven of the complaints are premised upon the City's deliberate indifference to the use of excessive force by its police department. The court further found that the determinative factor was the similarity of the alleged municipal policy of condoning excessive police force, not the variance in injury, time, or class of plaintiff. Therefore, the fact that some of the complaints allege excessive police force against black citizens was not relevant in determining the number of municipal policies alleged.

The twelfth complaint, *Plyler v. The City of Richmond*, alleges police harassment, not excessive force. Thus, the court determined that two alleged municipal policies existed.

The court below then examined 42 U.S.C. § 1983 and *Monell*, to determine whether the alleged policy of condoning excessive police force constituted a "single occurrence." Section 1983 requires that municipal liability be based upon a municipal custom or policy. Further, multiple occurrences may constitute a single municipal policy because, if the policy is "informal" (i.e. not expressly implemented), evidence of more than a single incident of unconstitutional activity may be necessary to prove the policy. Thus, liability under 42 U.S.C. § 1983 does not arise from each separate act of police misconduct, but the underlying municipal policy of condoning a series of similar police acts. Therefore, the alleged policy of condoning police brutality constitutes a "single occurrence" for purposes of establishing the insurer's liability under the "per occurrence" clause of the respective policies. This is consistent with the Third Circuit's reasoning in *Appalachian Ins. Co. v. Liberty Mutual Ins. Co.*, 676 F.2d 56 (3d Cir.1982).

review has no relevance in a federal court pro-          ceeding.

Upon our review of the underlying complaints, this court finds that all but *Plyler* allege excessive police force. Distinctions based upon class or type of injury are not material. Further, the District Court's analysis of the Mead policy as it relates to 42 U.S.C. § 1983 is consistent with case and statutory authority. Thus, the trial court's determination that two occurrences exist is AFFIRMED.

## II.

Granite further contends that the District Court erred in determining that Mead's "ultimate net loss" includes attorney fees, based upon the recent case of *Planet Ins. v. Mead Reinsurance*, 789 F.2d 668 (9th Cir.1986). Mead's insurance policy in *Planet* is identical to Mead's policy in this case.

In *Planet*, we held that the duty to defend was separate from the duty to indemnify. Accordingly, Mead's liability limitation was not reduced by attorney fees and costs.

Because the policies are identical, and the contract construction principles are similar, Granite contends that *Planet* is controlling. Thus, the District Court's ruling that "ultimate net loss" includes costs and attorney fees should be reversed.

Mead asserts that *Planet* is distinguishable for three reasons. First, the hierarchical method used in *Planet* is not used in California. Second, *Planet* involved application of Arizona law, and this case is from California. Third, the court in *Planet* did not decide how defense costs should be allocated when the indemnity payments exceed the first layer limit.

Mead further asserts that the District Court's ruling was correct because the reference to "attorney fees" in the second clause of the definition of "ultimate net loss" logically refers to fees incurred in defense of the action. Further, this construction is consistent with the third clause,

which distinguishes in-house expenses from defense litigation costs.[2]

In reaching its decision, the court in *Planet* closely examined the Mead policy, particularly the definition of "ultimate net loss" which establishes the insurer's obligation:

> (1) The sum actually paid ... in the settlement or satisfaction of losses for which the insured is liable ... with the written consent of the "Company," after making proper deductions for all recoveries and salvages collectible, (2) and includes attorney's fees, court costs and interest on any judgment or award, (3) but excludes all loss adjustment, expenses and all salaries of employees and office expenses of the insured....

Accordingly, we held that, for there to be no ambiguity, the definition of "ultimate net loss" must be read in an hierarchical order. When the ultimate net loss section is read in this order, the "attorney fees" refer to plaintiff's attorney fees awarded by the court. *Planet* held that its interpretation of ultimate net loss was consistent with the entire policy, which establishes that Mead "shall contribute" to legal expenses.

Last, the court in *Planet* observed that if attorney fees were included in "ultimate net loss," the amount of the defense could very likely consume the coverage.

The court's reasoning in *Planet* is well-founded. Further, Mead's attempt to distinguish *Planet* is without merit. Because the two policies are identical, the precedent of *Planet* must be followed by this court. Thus, attorney fees and costs are not included within the meaning of "ultimate net loss" as defined in Mead's insurance policy.

Granite alternatively states that the District Court erred in ruling that attorney fees were to be included in Mead's "ultimate net loss" definition, because it was

---

**2.** Mead also contends that the policy is not a "primary insurance policy," but rather an "indemnity first-layer excess policy"; which makes the City a self-insurer. Under California law, a self-insurer is responsible for selection of defense counsel. However, *Planet* clearly held that Mead must be characterized as a primary insurer because the policy expressly states that control of the defense of the dispute is with Mead, and not the insured.

not an issue in the City's summary judgment motion. The District Court found that ultimate net loss included attorney fees and costs in its Memorandum of Opinion and Order, without providing any rationale for its decision. Upon receiving a copy of the court's Opinion and Order, counsel for the City advised the District Court that it had not raised the issue of "ultimate net loss" as it related to Mead. Without further notice, the District Court's judgment stated that ultimate net loss included attorney fees and costs.

■ A court may only grant a motion *sua sponte* if all parties have a full opportunity to address the issue. *Heinz v. Commissioner of Internal Revenue,* 770 F.2d 874 (9th Cir.1985). Granite claims that it had no opportunity to brief the issue, and therefore the issue should be remanded to the District Court.

In response to Granite's alternative assertion, Mead claims that the issue of attorney fees and costs was properly before the District Court, because the City did place in issue whether it was liable for its litigation costs.

The issue of ultimate net loss, as it applied to Mead's liability, was peripherally involved in the resolution of the City's liability for its litigation costs. The District Court clearly stated in its Opinion and Judgment that ultimate net loss included attorney fees and costs. For the above reasons, and because *Planet* is clearly controlling, we do not find it necessary to remand the issue to the District Court.

### III.

The District Court's Order that there are two occurrences is AFFIRMED.

The District Court's order that ultimate net loss includes attorney fees and costs is REVERSED.

Each party is to bear their own costs.