*799
 
 OPINION
 

 Per Curiam:
 

 This dispute centers around the meaning of the term “occurrence” in an insurance policy under which Washoe County seeks indemnity from respondents Transcontinental Insurance Company and Columbia Casualty Company. We reverse the decision of the district court and remand with instructions to enter partial summary judgment in favor of Washoe County.
 

 FACTS
 

 In late 1985, over forty children and their parents sued Washoe County (the County) for negligently licensing the Papoose Palace Day Care Center (Papoose). The plaintiffs alleged that the County breached its duty to investigate Papoose’s employees and its duty to monitor Papoose’s activities. The victims also sued Papoose and Stephen L. Boatwright (Boatwright), the son of the owner of Papoose and an employee at the day-care center. Boatwright admitted that he had sexually abused numerous children over a three-year period beginning in May, 1980, and continuing until his arrest in April, 1983.
 
 [1]
 

 The County settled with each of the claimants for amounts ranging from $2,000.00 to $25,000.00, for a total of $406,000.00. When respondents Transcontinental Insurance Company and Columbia Casualty Company (the Carriers) failed to indemnify the County for the settlements, the County filed a claim against the Carriers. The Carriers were responsible for claims in excess of $50,000.00 under the “retained limit” clause of the insurance policies. The policies specified: “[f]or the purpose of determining the insured’s retained limit, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.” The term occurrence was defined in the policies as “an accident, or event, including injurious exposure to conditions, which results, during the policy period, in personal injury, property damage, or public officials errors and omissions.”
 

 
 *800
 
 The County moved for partial summary judgment, asking the trial court to construe the term “occurrence” in the insurance policies as a matter of law.
 
 [2]
 
 The County maintained that its liability arose from one ongoing act of negligence — namely, the County’s inadequate investigation and monitoring of Papoose in conjunction with the licensing process — which resulted in the children’s repeated exposure to unsafe conditions at Papoose. Thus, the County argued that all the acts of molestation by Boatwright constituted one occurrence under the language of the policies. The Carriers filed a counter-motion for summary judgment on all issues, maintaining that injuries to each child constituted separate occurrences per policy period since the County was exposed to new liability each time Boatwright molested a different child. Accordingly, the Carriers argued that the County never exceeded the $50,000.00 retained limit per injury to each child, attempting to escape any obligation to indemnify the County.
 

 The district court granted the Carriers’ motion for summary judgment, finding that because the separate acts of molestation by Boatwright caused the children’s injuries, the molestation of each child constituted a separate occurrence. We conclude that the district court erred in its interpretation of the term “occurrence,” and reverse and remand to the district court for entry of summary judgment in favor of the County on this issue.
 

 DISCUSSION
 

 Entry of summary judgment is proper only when there are no issues of fact and the moving party is entitled to judgment as a matter of law. Insurance Corp. of America v. Rubin, 107 Nev. 610, 818 P.2d 389 (1991). When the parties do not dispute the facts, the interpretation of a contract is a question of law. Grand Hotel Gift Shop v. Granite St. Ins., 108 Nev. 811, 815, 839 P.2d 599, 602 (1992). The facts of this case are undisputed. Thus, this court will review the district court’s findings de novo as a question of law.
 
 Id.
 

 The County argues that the meaning of the term occurrence in the insurance policies must be viewed from the standpoint of the
 
 cause
 
 on which its liability was based — the County’s allegedly inadequate licensing process.
 
 [3]
 
 The Carriers argue that the calcu
 
 *801
 
 lation of the number of occurrences must focus on each child who was molested per policy period, and must maximize coverage for the insured.
 
 [4]
 

 In Bish v. Guaranty Nat’l Ins., 109 Nev. 133, 135, 848 P.2d 1057, 1058 (1993), we adopted die “causal approach” used by the vast majority of jurisdictions in determining whether certain circumstances constitute one occurrence or multiple occurrences for the purposes of insurance liability. The causal approach focuses on whether there was one, or more than one, cause which resulted in all of the injuries or damages. In
 
 Bish,
 
 we stated: “the focus of the inquiry should not be on the number, magnitude or time of the injuries, but rather on the cause or causes of the injury. ... ‘As long as the injuries stem from one proximate cause there is a single occurrence.’ ”
 
 Id.
 
 at 135, 848 P.2d at 1058 (quoting Welter v. Singer, 376 N.W.2d 84, 87 (Wis. Ct. App. 1985) (quoting Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982));
 
 see also
 
 Transport Ins. Co. v. Lee Way Motor Freight, Inc., 487 F. Supp. 1325, 1329-30 (N.D. Tex. 1980) (“where a single event, process or condition results in injuries, it will be deemed a single occurrence even though the injuries may be widespread in both time and place and may affect a multitude of individuals”).
 

 In the instant case, each of the separate instances of molestation arises from the same proximate cause vis-a-vis the County: namely, the County’s alleged negligence in the process of licensing Papoose. We conclude that the County’s negligence in the licensing process and in its attendant duties to investigate and monitor Papoose constitutes a single occurrence for purposes of liability.
 

 The Carriers rely on Insurance Corp. of America v. Rubin, 107 Nev. 610, 818 P.2d 389 (1991), a case involving a doctor who was sued for his failure to diagnose a young patient with a
 
 *802
 
 brain tumor. Because Dr. Rubin made an independent evaluation upon each visit and different symptoms were revealed during each visit, we held that under the causal approach, each diagnosis was a separate “occurrence” for purposes of the insurance policy limit.
 
 Id.
 
 at 615, 818 P.2d at 392.
 

 Respondents argue that, like Dr. Rubin, Boatwright made an independent assessment or decision each time he decided to molest a particular child. This argument, however, is misplaced, as it is the County’s liability, not Boatwright’s liability, which is at issue. Thus, the “cause” of the molestations needs to be considered with an eye towards the County’s involvement, not towards Boatwright’s involvement.
 

 Respondents also rely on Interstate Fire & Casualty Co. v. Portland Archdiocese, 747 F. Supp. 618 (D. Or. 1990) and State Farm Fire & Casualty Co. v. Elizabeth N., 12 Cal. Rptr. 2d 327 (Ct. App. 1992). Both of these cases dealt with repeated molestations of one child, and concluded that repeated molestations of a single child constituted a single occurrence under the liability policy because in each case the child’s injuries resulted from continuous and repeated exposure to the same general conditions.
 
 [5]
 
 Additionally, these cases concluded that each time negligent supervision presented an employee with the opportunity to molest a different child, the entities were exposed to new liability.
 
 See Portland Archdiocese,
 
 747 F. Supp. at 624 (“All of the damage caused to one child by Father Laughlin represents only one occurrence because each time Father Laughlin molested the same child, the Archdiocese was not exposed to new liability.”);
 
 Elizabeth
 
 N., 12 Cal. Rptr. 2d at 327 (“[T]he insured’s acts and omissions were one occurrence under the policy as to each child.”);
 
 accord
 
 Lee v. Interstate Fire & Cas. Co., 826 F. Supp. 1156 (E.D. Mo. 1992).
 

 The district court relied on
 
 Portland Archdiocese
 
 and
 
 Elizabeth N.
 
 in determining that the repeated molestation of each child constituted separate occurrences. The reasoning of these cases, however, is wrongly focused on the “effects” of the molestations rather than on their cause. Reliance on these cases thus led the district court to focus on the children’s injuries, the “effects” of the molestation. This focus is seen in the district court’s order granting partial summary judgment, which states:
 

 [Wjhen several people are injured, the Courts in applying the cause theory, focus on the injury aspect of tortious conduct and find coverage for the greatest number of people.
 
 *803
 
 It is logically difficult to conclude that injuries to different human beings has an aspect of unity.
 

 We thus conclude that the district court’s analysis is an incorrect application of the “cause” test enunciated by this court in Bish v. Guaranty Nat’l Ins., 109 Nev. 133, 135, 848 P.2d 1057, 1058 (1993).
 

 Two cases involving similar sets of relationships to those in the instant case support our interpretation. The first is Mead Reinsurance v. Granite State Ins. Co., 873 F.2d 1185 (9th Cir. 1988).
 
 Mead Reinsurance
 
 involved underlying claims against the City of Richmond for police misconduct, pursuant to 42 U.S.C. § 1983. Eleven of the underlying lawsuits against the city were premised upon the “City’s deliberate indifference to the use of excessive force by its police department,” while the twelfth lawsuit alleged police harassment. As in the case at bar, the policy defined “one occurrence” as damage arising from “repeated exposure to substantially the same general conditions.”
 
 Mead Reinsurance,
 
 873 F.2d at 1187. The Ninth Circuit rejected Granite’s argument that there were multiple occurrences because the many different police actions resulted in multiple injuries to multiple and diverse claimants, concluding instead that there were two occurrences: one for liability for the harassment claim, and one for
 
 all
 
 of the claims for deliberate indifference to use of excessive force. In explaining this conclusion, the Ninth Circuit held:
 

 Thus, liability under 42 U.S.C. § 1983 does not arise from each separate act of police misconduct, but the underlying municipal policy of condoning a series of similar police acts. Therefore, the alleged policy of condoning police brutality constitutes a “single occurrence” for purposes of establishing the insurer’s liability under the “per occurrence” clause of the respective policies. This is consistent with the Third Circuit’s reasoning in
 
 Appalachian Ins. Co. v. Liberty Mutual Ins. Co.,
 
 676 F.2d 56 (3d Cir. 1982).
 

 Id.
 
 at 1188.
 
 See Appalachian Ins. Co.,
 
 676 F.2d at 61 (in a class-action suit challenging Liberty’s discriminatory employment policy against women, the Third Circuit held that though there were many plaintiffs with multiple injuries incurred over a long period of time, there was but one occurrence since the injuries for which Liberty was liable all resulted from one prominent cause: Liberty’s adoption of its discriminatory employment policies).
 
 Id.
 
 at 61.
 

 We find
 
 Mead Reinsurance
 
 analogous to the instant case. We note that the city of Richmond was not accused of direct or vicarious responsibility for the actual misconduct of the several
 
 *804
 
 individual policemen in the eleven actions, but was accused of inaction or inadequate action in overseeing the operations of the police department. Similarly, the County was not accused of direct or vicarious responsibility for the actual molestations by Boatwright, but was accused of inaction or inadequate action in the process and attendant duties of licensing the day-care center. Accordingly, even though the actions of the individual wrongdoers are the most direct causes of harm for the victims in both
 
 Mead Reinsurance
 
 and the instant case, the actions of the individual wrongdoers taken alone are not the basis of liability for the city of Richmond or the County in the instant case. Instead, liability for both entities is premised on the entities’ negligence in performing a duty, which permitted the intervening conduct of those who actively caused the victims’ harm.
 

 The case of Home Indem. Co. v. City of Mobile, 749 F.2d 659 (11th Cir. 1984), further illustrates this concept. In
 
 Home Indemnity,
 
 heavy rain storms on three separate occasions caused overflows at various points' in the city drainage system, resulting in extensive property damage to multiple property owners.
 
 Id.
 
 at 660-61. The insurance company argued that each separate rainfall and subsequent flood was a separate occurrence which had caused the property damage, while the city argued that occurrence should be defined by “effect,” so that damage to each claimant’s property by each incident of flooding was a separate occurrence for purposes of coverage. The trial court rejected both assertions, finding that what created liability for the city was not the rainfall and flooding, but the negligence of the city in constructing and maintaining its drainage system.
 
 Id.
 
 at 661.
 

 The Eleventh Circuit agreed, holding that because the intervening negligence of the city in constructing and maintaining its water drainage system was the cause of the events leading to Mobile’s liability, it was therefore the “occurrence” for purposes of the city’s insurance coverage.
 
 Id.
 
 at 663.
 
 [6]
 
 The court noted that interpreting “occurrence” to refer to flooding damage sustained by each individual property improperly focused on the various effects of the events on various individuals seeking to impose liability on the city.
 
 Id.
 

 
 *805
 
 We conclude that the rainfall and floods of
 
 Home Indemnity
 
 are analogous to the acts of the molester in the case at bar: the natural disasters in
 
 Home Indemnity
 
 did not cause Mobile’s liability, nor did Boatwright’s actions cause the County’s liability. Liability in both cases arises from the entities’ failure to adequately perform an ongoing duty: absent such a duty, the city of Mobile would not be liable for injuries caused by flooding, and the County would not be liable for injuries caused by a child molester.
 

 In interpreting coverage for such entities under the “causal” approach, “occurrence” should be defined in such a way as to give meaning to the entity’s connection to liability. In the case at bar, the County “caused” the children’s injuries through its failure to act with the requisite care in the process of licensing Papoose. Therefore, such failure must be considered the “occurrence” for purposes of insurance liability. We note that this interpretation is consistent with another provision of the policy which provides that “all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.”
 

 Additionally, the County asserts that the district court abused its discretion in admitting the affidavits of respondents’ two expert witnesses in support of the Carrier’s motion for summary judgment. The expert witnesses were attorneys involved in the
 
 Elizabeth N.
 
 and
 
 Portland Archdiocese
 
 cases cited in the Carriers’ briefs, whose testimony was offered to prove to the district court certain facts regarding the case not contained in the published decisions, and to offer opinions on why the County was incorrect in its interpretation of occurrence.
 

 The County brought a motion to strike both affidavits on the grounds that they were inadmissible and immaterial. The district court did not rule on the motion to strike, which indicates that the district court did not consider or rely on the affidavits. However, even if the district court did consider the affidavits, such action does not impact our analysis.
 

 CONCLUSION
 

 Based on our conclusion that the district court erred in its interpretation of the term “occurrence” used in the insurance policies, we reverse the district court’s grant of summary judgment in favor of the Carriers, and remand to the district court for entry of summary judgment in the County’s favor on the meaning of the word “occurrence.”
 

 [1]
 

 Boatwright was convicted of four counts of sexual assault of a child under the age of fourteen and was sentenced to serve four consecutive terms of life imprisonment with the possibility of parole.
 
 See
 
 Boatwright v. Director, 109 Nev. 318, 849 P.2d 274 (1993).
 

 [2]
 

 The County has a remaining claim for breach of the implied covenant of good faith and fair dealing.
 

 [3]
 

 We note that the County’s involvement in the licensing process gave rise to the corresponding duties of investigating and monitoring the day-care
 
 *801
 
 center. Without undertaking the duty of licensing day-care centers, the County would have no duty to investigate or monitor such centers.
 

 [4]
 

 Though generally courts are in favor of construing policies to maximize coverage in favor of the insured, respondents’ argument regarding maximizing coverage for the insured is unpersuasive in this case. First, the “insured” in this case is the County, rather than an individual, unsophisticated consumer in need of the protection that the general rule affords. Second, even considering the victims in this case as the ones in need of maximum coverage, pursuant to NRS 41.031 and NRS 41.035(1), the County’s sovereign immunity protects it from having to pay more than $50,000.00 per claim in a personal injury tort case. Thus, the only interpretation of the term “occurrence” in this case that would have any effect on the claimants’ ability to recover is the conclusion that each incident of molestation of the same child constituted a separate occurrence. This argument is not put forth by respondents, nor is it in step with the “causal” approach we adopt in this case.
 

 [5]
 

 The same language contained in the policies in these cases is contained in the policies in the instant case.
 

 [6]
 

 We note that the court held that each discrete act or omission, or series of acts or omissions, which caused water to flood and damage properties instead of draining properly, was a single occurrence. Thus, if on account of the city’s negligence a drain on one street was blocked so that water flooded 10 houses on that street, that would be one occurrence, while a drainage block on the other side of the city causing flooding and damage to 100 houses would be another occurrence.
 
 Id.
 
 at 663. Such reasoning would not apply in the instant case, where the County’s alleged negligence was directed towards a single institution, and where its negligence cannot be separated out into discrete acts or omissions.