*State of Maryland, et al., v. Michael Young*, No. 27, September Term, 2025.

**SOVEREIGN IMMUNITY – MARYLAND TORT CLAIMS ACT – ENTRY OF JUDGMENT**

If State personnel committed a tortious act or omission within the scope of their public duties without malice or gross negligence, then the State personnel have immunity and judgment should be entered against the State, subject to the limitations on the State's waiver of sovereign immunity in the Maryland Tort Claims Act.

**SOVEREIGN IMMUNITY – MARYLAND TORT CLAIMS ACT – INCIDENT OR OCCURRENCE – CAUSE TEST**

If a plaintiff proves that only a single negligent act or omission proximately caused the plaintiff's injuries or damages, there is only one incident or occurrence under the Maryland Tort Claims Act. If the plaintiff proves that multiple negligent acts or omissions proximately caused the plaintiff's injuries or damages, there may be a single incident or occurrence if the acts or omissions are continuous or repeated, are causally related, give rise to the same risk, or act concurrently to produce the same injury. Multiple negligent acts or omissions may result in multiple incidents or occurrences if the acts or omissions are not causally related, introduce different risks, and operate separately to produce injury or damages.

**SOVEREIGN IMMUNITY – MARYLAND TORT CLAIMS ACT – INCIDENT OR OCCURRENCE – JURY DETERMINATION**

In a case tried before a jury, the trial court may not find multiple incidents or occurrences for the purposes of applying the limitation on the State's limited waiver of sovereign immunity under the Maryland Tort Claims Act unless the jury has expressly or necessarily found that multiple negligent acts were non-concurrent proximate causes of the plaintiff's injuries or damages.

**SOVEREIGN IMMUNITY – *LONGTIN* PATTERN-OR-PRACTICE CLAIMS – MOOTNESS**

An issue is moot if the Appellate Court determines that the plaintiff failed to present sufficient evidence to prevail on the claim and the plaintiff does not contest that determination on appeal.

IN THE SUPREME COURT

OF MARYLAND

No. 27

September Term, 2025

_____

STATE OF MARYLAND, ET AL.

v.

MICHAEL YOUNG

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.
_____

Opinion by Fader, C.J.
_____

Filed: June 23, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Michael Young, the respondent, suffered serious injuries when other incarcerated individuals attacked him while he was incarcerated at Maryland Correctional Training Center. He sued Sergeant Jeremy Wright, Warden Richard Dovey, and the State of Maryland, among others, for damages. A jury found Sgt. Wright and Warden Dovey negligent and awarded Mr. Young $1,000,000 in damages against each of them. The jury also found the State liable for engaging in or allowing a pattern or practice of unconstitutional conduct by its employees, as set forth in *Prince George's County v. Longtin*, 419 Md. 450 (2011), and awarded Mr. Young $2,000,000 on that claim.

On a post-trial motion, the Circuit Court for Baltimore County declined to reduce or vacate any of the awards. On appeal, the Appellate Court of Maryland held that the awards against the individual defendants should have been reduced to a combined $800,000 to comply with the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-104 & 12-105 (Repl. 2021; Supp. 2025); Md. Code Ann., Cts. & Jud. Proc. § 5-522 (Repl. 2020; Supp. 2025). The Appellate Court also vacated the judgment against the State on the *Longtin* claim. The court held that *Longtin* pattern-or-practice claims may be brought against the State, but that Mr. Young had failed to present sufficient evidence for the jury to find in his favor on that claim.

This appeal presents three issues for our resolution. The first two concern the MTCA, in which the State partially waived its sovereign immunity as to certain torts committed by State personnel acting within the scope of their public duties without malice or gross negligence, and simultaneously granted State personnel immunity for such torts.

The State's waiver of sovereign immunity under the MTCA is generally limited to $400,000 for each "incident or occurrence" that causes injury.

The first issue is whether the circuit court erred in entering judgment against the individual defendants, Sgt. Wright and Warden Dovey, in the absence of a finding that they acted with malice or gross negligence. We hold that the circuit court erred. Absent a finding of malice or gross negligence, or that the individual defendants' actions were outside the scope of their duty, a judgment in an action covered by the MTCA may be entered against only the State.

The second issue presented concerns the number of "incidents or occurrences" in question, which in turn determines the limits applicable to Mr. Young's damages. We hold that the circuit court erred in not reducing the verdict to $400,000 to reflect a single incident or occurrence. Under the "cause" test, which we have applied to claims under the Local Government Tort Claims Act and now adopt with respect to the MTCA, the number of incidents or occurrences depends on the number of non-concurrently acting tortious acts or omissions that proximately cause injuries or damages. Here, Mr. Young's claim of two incidents or occurrences is premised on his contention that Sgt. Wright engaged in two independent tortious acts, each of which was the proximate cause of a separate attack. However, the jury was not asked whether Sgt. Wright engaged in more than one tortious act and so did not find that he did. Absent such a finding, the circuit court erred in not reducing the damages award to $400,000 to reflect a single incident or occurrence.

2

The third issue is whether plaintiffs may bring so-called "*Longtin* claims" against the State. A *Longtin* claim alleges liability of a governmental entity for engaging in or allowing a pattern or practice of unconstitutional conduct by its employees. In *Longtin*, we held that plaintiffs may bring these claims against local governments. Here, the Appellate Court held that such a claim also may be brought against the State, but that Mr. Young had not presented sufficient evidence for the jury to find in his favor on that claim. As Mr. Young did not challenge the sufficiency holding, the issue of whether a *Longtin* claim against the State was viable is moot before this Court. Rather than allow Mr. Young's concession of the ultimate merits of his *Longtin* claim to effectively insulate from this Court's review the determination that such claims may be brought against the State, we will vacate the Appellate Court's opinion to the extent it addresses the viability of a *Longtin* claim against the State.

Accordingly, we will partially reverse and partially vacate the judgment of the Appellate Court.

## BACKGROUND

### A. *Statutory Background*

Sovereign immunity is an "absolute immunity," *State v. Rovin*, 472 Md. 317, 347 (2021), that is "[g]rounded in ancient common law," *Condon v. State of Maryland-Univ. of Maryland*, 332 Md. 481, 492 (1993). Sovereign immunity "prohibits suits against the State or its entities absent its consent." *Magnetti v. Univ. of Maryland*, 402 Md. 548, 557 (2007). It is "one of the highest attributes of sovereignty[.]" *Katz v. Washington Suburban*

3

*Sanitary Comm'n*, 284 Md. 503, 512 (1979) (quoting *Dunne v. State*, 162 Md. 274, 288-89 (1932)).

Sovereign immunity may be waived only "directly or by necessary implication." *Katz*, 284 Md. at 507-08. "[T]o avoid weakening the doctrine of sovereign immunity by judicial fiat," *Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 720 (2004), waivers of sovereign immunity "are strictly construed in favor of the State," *Brawner Builders, Inc. v. State Highway Admin.*, 476 Md. 15, 32 (2021). Because sovereign immunity may be waived only through an act of the General Assembly, it may not be waived by a party to a suit, and therefore can be asserted as a defense "at any time, even 'for the first time on appeal.'" *Bd. of Educ. of Worcester County v. Beka Indus., Inc.*, 190 Md. App. 668, 691 (2010) (quoting *Dep't of Pub. Safety & Corr. Servs. v. ARA Health Servs.*, 107 Md. App. 445, 459 (1995)), *aff'd in part and rev'd in part*, 419 Md. 194 (2011).

The MTCA contains a partial waiver of the State's sovereign immunity for certain tort claims brought in a Maryland court. The waiver applies to tortious acts committed by State personnel acting within the scope of their public duties without malice or gross negligence, up to a monetary limit. State Gov't § 12-104; Cts. & Jud. Proc. § 5-522. For most claims, including those at issue here, that limit is $400,000 to a single claimant for injuries arising from a single "incident or occurrence." State Gov't § 12-104(a)(2); Cts. & Jud. Proc. § 5-522(a)(5). As originally enacted in 1981, the scope of the State's partial waiver of immunity was further limited "to the extent and in the amount that the State is covered by a program of insurance established by the Treasurer[.]" 1981 Md. Laws, Ch.

4

298, at 1611.  The Treasurer now provides coverage for tort judgments through a self-insurance program.  *See* Code of Maryland Regulations ("COMAR") 25.02.02.02A; Md. State Treasurer, *Insurance*, https://treasurer.state.md.us/insurance/, *archived at* https://perma.cc/UX3E-LAPW.

In partially waiving the State's sovereign immunity for certain tort actions committed by State personnel, the General Assembly granted corresponding immunity to those State personnel.  Cts. & Jud. Proc. § 5-522(b) ("State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under [the MTCA], even if the damages exceed the limits of that waiver.").  In essence, in enacting the MTCA, the General Assembly substituted the State, up to the limit of its partial waiver, for its personnel as the responsible party for the torts the MTCA covers.  *See Williams v. Morgan State Univ.*, 484 Md. 534, 542-44 (2023).  For torts that do not fall within the scope of the MTCA waiver, the State personnel remain responsible and subject to individual liability, and the State retains its sovereign immunity.  *Id.*

### B.      Factual Background[1]

The events underlying this lawsuit arose while Mr. Young was incarcerated at Maryland Correctional Training Center.  He had previously been transferred out of that

---

[1] "We review a grant or denial of a motion for judgment notwithstanding the verdict for legal correctness, by 'viewing the evidence and the reasonable inferences to be drawn

facility after reporting that an officer sexually harassed him, but was later transferred back. Shortly after his return, Mr. Young's cellmate attacked him, purportedly based on orders from a corrections officer. Mr. Young believed that the attack was in retaliation for his sexual harassment claim.

After the attack, Mr. Young submitted a formal complaint, called an Administrative Remedy Procedure, in which he stated that he feared for his life. Applicable regulations required that the person receiving the complaint acknowledge receipt, and that the complaint be reviewed and, if necessary, investigated within 15 days. COMAR 12.02.28.08(E)(2), (3). Mr. Young never received an acknowledgement of receipt. Worried that officers had discarded his complaint without submitting it, he asked his wife to send a letter to the warden of the facility, Richard Dovey, outlining his safety concerns. According to Warden Dovey's correspondence log, he received the letter and assigned a lieutenant to investigate Mr. Young's concerns. However, the section of the correspondence log for documenting the results of the investigation was left blank, and in his testimony at trial, Warden Dovey had no memory of any investigation.

On the day of the events in question, Sergeant Jeremy Wright was the tier officer for Housing Unit 6-B, where Mr. Young resided. Tier officers are responsible for

---

from it in the light most favorable to the non-moving party, and determining whether the facts and circumstances only permit one inference with regard to the issue presented.'" *Mayor & City Council of Baltimore v. Varghese*, 493 Md. 1, 11 (2025) (quoting *Cooper v. Rodriguez*, 443 Md. 680, 706 (2015)). We therefore present the facts in the light most favorable to Mr. Young.

supervising and ensuring the safety of the incarcerated individuals on the tier. Housing Unit 6-B was comprised of one long hallway with cells on each side. As tier officer, Sgt. Wright had access to a panel at the head of the tier that controlled the locking and unlocking of cells. A locked metal grille separated the control panel from the tier. While at the panel, Sgt. Wright could see the entire hallway.

At the beginning of recreation periods, the tier officer unlocks all cell doors on the tier from the panel. Incarcerated individuals can choose to go to the recreation hall, located to the right of the control panel, or stay inside their cells. Once the individuals who choose to go to the recreation hall have left their cells, the tier officer is supposed to close and re-lock the cell doors.

On the day in question, Sgt. Wright opened the cell doors at the beginning of the recreation period. Mr. Young elected to stay in his cell. After some of the incarcerated individuals left for the recreation hall and no one remained in the hallway, Sgt. Wright closed and locked all cell doors. A few minutes later, Mr. Young's cell door opened again, and a group of "around four or five" men rushed in and attacked him with knives and a combination lock tied inside of a sock. The attack lasted for a minute or two.

Mr. Young eventually escaped from his cell into the tier hallway. From the control panel, Sgt. Wright observed a bloodied Mr. Young walking towards him.[2] After making

---

[2] At trial, Sgt. Wright denied closing and re-opening the cell doors. He testified that he saw Mr. Young walking down the hallway "a minute or two" after he opened the cell doors for the first time.

eye contact with Sgt. Wright, Mr. Young walked into the recreation hall. Sgt. Wright called out Mr. Young's name, but Mr. Young did not respond. Sgt. Wright stayed behind the grille because he did not believe the situation was safe for him to enter alone. He eventually called for assistance.[3]

As Mr. Young opened the door to the recreation hall, multiple people pulled him into the bathroom area and attacked him, this time without weapons. Mr. Young could not identify whether these attackers were the same people who had attacked him in his cell.

Sgt. Wright could partially see into the bathroom during the attack because the partition separating the bathroom from the rest of the area was about mid-waist high. He did not intervene during this attack because he was still waiting for "the appropriate amount of staff" to arrive to ensure his safety.

Mr. Young estimated that the attack in the recreation hall lasted approximately a minute and a half, and ended when officers arrived and the attackers "just stopped." Mr. Young then walked out of the recreation hall and saw several officers.[4] He was taken

---

[3] Sgt. Wright's logbook indicates that he opened the cell doors at 12:30 p.m. and that he called for help at 12:45 p.m. However, Sgt. Wright testified that he initially saw Mr. Young "1 to 2 minutes after 12:30," he called for assistance immediately, and the recreation hall attack was over by "12:33, 12:35." Sgt. Wright testified that the gap in the logbook reflected the time it took him to make the logbook entry, not the time it took him to call for assistance.

[4] Sgt. Wright testified that Mr. Young had returned to the grille before staff arrived. The record is unclear whether the officers arrived before Mr. Young left the recreation hall or afterwards.

to the hospital, where he was treated for seventeen stab wounds and two facial bone fractures.

## C.    *Procedural Background*

Mr. Young filed suit in the Circuit Court for Baltimore County against Sgt. Wright, Warden Dovey, and the State of Maryland, among others. He asserted that: (1) the defendants violated his rights under Articles 16, 24, 25, and 26 of the Maryland Declaration of Rights; (2) the State was liable for permitting a "pattern and practice" of unconstitutional conduct by its employees under *Longtin*; and (3) the State and Warden Dovey were liable for negligent hiring, retention, training, and supervision; negligence and gross negligence; and battery.

A jury found both Warden Dovey and Sgt. Wright liable for negligence and awarded Mr. Young $1,000,000 in damages against each. The jury also found for Mr. Young on the *Longtin* pattern-or-practice claim and awarded $2,000,000 in damages against the State. The jury found for the defendants on all other counts. The trial court entered judgment against Sgt. Wright for $1,000,000, Warden Dovey for $1,000,000, and the State for $2,000,000.

The defendants filed a post-trial motion requesting a new trial, judgment notwithstanding the verdict, or, in the alternative, a reduction in the judgment. The defendants argued that the circuit court erred in submitting the *Longtin* pattern-or-practice claim to the jury because the State is not subject to such a claim. Sgt. Wright and Warden Dovey also contended that because the jury found that they had not acted with malice or

gross negligence, the circuit court erred in entering judgment against them. Finally, the defendants argued that if they were not awarded a new trial, the judgment must be reduced to $400,000 in conformance with the MTCA.

Mr. Young opposed the motion. On the request to reduce the judgment, Mr. Young conceded the application of the MTCA's $400,000 limitation per "incident or occurrence." He contended, however, that there were two separate incidents or occurrences because he was attacked twice: once in his cell and once in the recreation hall. Accordingly, he argued that the negligence judgment against the individual defendants should be reduced from $1,000,000 to $800,000, not $400,000.[5] Notwithstanding Mr. Young's partial concession, the circuit court denied the defendants' motion in its entirety without explanation.

The Appellate Court of Maryland affirmed in part and reversed in part. *State v. Young*, 265 Md. App. 1, 39 (2025). As relevant here, the Appellate Court affirmed the negligence judgments entered against Sgt. Wright and Warden Dovey, although it recognized that they are immune from tort liability and stated that the judgment should be "enforceable against the State." *Id.* at 10. With respect to the number of incidents or occurrences, in the absence of any finding in the trial court on that issue, the Appellate Court conducted its own review of the record. *Id.* at 38-39. The court held that, based on the evidence at trial, the attack in the cell and the attack in the recreation hall constituted

---

[5] Mr. Young took the position that his $2,000,000 judgment against the State for the *Longtin* pattern-or-practice claim was not subject to the MTCA limitation. Given the Appellate Court's disposition of the *Longtin* claim, which Mr. Young has not opposed, that issue is not before us.

two separate incidents or occurrences. *Id.* As a result, the court concluded that the State's total liability based on the negligence of the individual defendants was $800,000. *Id.* at 37-39. Finally, the Appellate Court held that *Longtin* claims may be brought against the State, *id.* at 19, but that Mr. Young had failed to present sufficient evidence to support a verdict in his favor on that claim, *id.* at 31. It therefore reversed the judgment on that claim. *Id.*

The defendants petitioned this Court for a writ of certiorari, which we granted. *State v. Young*, 491 Md. 629 (2025). The issues presented in this appeal are: (1) whether the circuit court erred in entering judgment against Sgt. Wright and Warden Dovey individually; (2) whether the judgment against the State should have been limited to $400,000, for a single incident or occurrence, or $800,000, for two incidents or occurrences; and (3) whether a *Longtin* pattern-or-practice claim can be maintained against the State. Mr. Young did not cross-petition or otherwise challenge the Appellate Court's *Longtin* sufficiency judgment.

## DISCUSSION

### I. STANDARD OF REVIEW

We review a trial court's decision to deny a motion for a new trial under the abuse of discretion standard. *Williams v. State*, 462 Md. 335, 344 (2019). We review denials of motions for judgment notwithstanding the verdict for legal correctness, while viewing the evidence "in the light most favorable to the non-moving party," here Mr. Young. *Mayor & City Council of Baltimore v. Varghese*, 493 Md. 1, 11 (2025) (quoting *Cooper v.*

*Rodriguez*, 443 Md. 680, 706 (2015)).  All three issues in this appeal present questions of law that we review without deference.  *State v. Robertson*, 463 Md. 342, 351 (2019).

## II. ENTRY OF JUDGMENT AGAINST SGT. WRIGHT AND WARDEN DOVEY

We first address whether the circuit court erred in entering judgment against Sgt. Wright and Warden Dovey individually.  The parties agree that, under the MTCA, the circuit court should have entered judgment against only the State.  We agree as well.

When State personnel commit a tort, either the State or the State personnel may be liable under the MTCA, but never both.  *See Williams v. Morgan State Univ.*, 484 Md. 534, 544 (2023) ("[L]iability of the State and liability of individual State personnel are mutually exclusive.  If the State is liable, the individual is immune; if the individual is liable, the State is immune." (quoting *Newell v. Runnels*, 407 Md. 578, 635 (2009))).  If the negligent State personnel are found to have acted within the scope of their public duties without malice or gross negligence, then they are immune, and the State is liable, subject to the limitations of its waiver.  *Rodriguez v. Cooper*, 458 Md. 425, 451-52 (2018) (stating that in that circumstance, "the MTCA substitutes the State for the State personnel as the appropriate defendant in such an action"); State Gov't § 12-104(a); Cts. & Jud. Proc. § 5-522(b).  But if the State personnel are found to have acted outside the scope of their public duties or with malice or gross negligence, then the State personnel are liable, and the State retains its sovereign immunity in full.[6]  Cts. & Jud. Proc. § 5-522(a)(4), (b).

---

[6] In this respect, the MTCA diverges from the Local Government Tort Claims Act.  Under that Act, if a factfinder determines that local government personnel acted with

12

Here, the State, Sgt. Wright, and Warden Dovey were all proper defendants through trial. The State was a proper defendant because Mr. Young alleged that Sgt. Wright and Warden Dovey acted with negligence and in the scope of their public duties. Sgt. Wright and Warden Dovey were also proper defendants because Mr. Young also alleged that they acted with malice and gross negligence. In rendering its verdict, the jury concluded that Sgt. Wright and Warden Dovey acted only negligently, not with malice or gross negligence. Based on that finding, which has not been challenged on appeal, Sgt. Wright and Warden Dovey were immune from liability pursuant to § 5-522(b) of the Courts and Judicial Proceedings Article, and only the State was liable to Mr. Young. Accordingly, the circuit court erred in entering judgment against Sgt. Wright and Warden Dovey. On remand, the circuit court should vacate the judgments against the individual defendants and enter judgment against the State.

### III. The Number of "Incidents or Occurrences"

The State's partial waiver of sovereign immunity under the MTCA is limited to "$400,000 to a single claimant for injuries arising from a single incident or occurrence." State Gov't § 12-104(a)(2)(i); *see* Cts. & Jud. Proc. § 5-522(a)(5) (stating that the State's immunity "is not waived" for "[a] claim by an individual arising from a single incident or occurrence that exceeds the amount specified in § 12-104 of the State Government Article"). The question presented in this appeal—whether Mr. Young's claim against the

---

malice, both the local government and its personnel are liable. *See DiPino v. Davis*, 354 Md. 18, 49 (1999) (citing Cts. & Jud. Proc. §§ 5-302(b), 5-303(b)).

13

State consists of one incident or occurrence, or two—seems simple.  The answer is more complicated.  To reach it, we must explore the meaning of "incident or occurrence" in the context of the MTCA.  In doing so, we will consider how courts have addressed similar questions in the related field of insurance and under analogous tort claims statutes.

### A.     The Meaning of "Incident or Occurrence" in the MTCA Context

#### 1.     The "Cause" Test

The MTCA does not define "incident" or "occurrence."  COMAR defines "incident" as "an act or omission of State personnel that constitutes an alleged tort under the [MTCA] and is alleged to have caused injury, loss, or damage to person or property by reason of a single occurrence."  COMAR 25.02.01.02B(3).  The regulation does not separately define "occurrence."

Although we have not had occasion to consider how to assess the number of incidents or occurrences under the MTCA, we have considered a related issue in the analogous context of the Local Government Tort Claims Act ("LGTCA").  *See* Cts. & Jud. Proc. § 5-303(a)(1) ("[T]he liability of a local government may not exceed $400,000 per an individual claim, and $800,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions[.]").  In *Board of County Commissioners of St. Mary's County v. Marcas, L.L.C.*, this Court answered a certified question from the United States District Court for the District of Maryland that asked whether multiple tort counts and injuries alleged in a complaint constitute the "same occurrence" under the LGTCA.  415 Md. 676, 678 (2010).  Our analysis in that case is instructive.

In *Marcas*, the plaintiff claimed that subsurface methane gas and other volatile organic compounds had migrated from a landfill to adjacent properties, including the plaintiff's. *Id.* at 679. The plaintiff alleged that the defendant's negligence "occurred in many ways over an extended period of time," and that "each day of contamination equals a separate occurrence." *Id.* at 678-79. The defendant argued that the sub-surface migration of the hazardous materials was a single occurrence. *Id.* at 679. At the time, the LGTCA provided a limit of liability of "$200,000 per an individual claim, and $500,000 per total claims that arise from the same occurrence[.]" *Id.* at 684 (quoting Cts. & Jud. Proc. § 5-303(a) (2001)).

Engaging in an exercise of statutory construction, we observed that the limitation on liability in the LGTCA was "enacted 'for the purpose of limiting the civil liability of local government.'" *Marcas*, 415 Md. at 686 (quoting S. Jud. Proc. Comm., Summary of Comm. Rep., S.B. 237, 397th Gen. Assemb., Reg. Sess. at 3 (Md. 1987)). We cited legislative history observing that the cap on liability was similar to caps in other statutes, including the MTCA, and that the cap was deemed "necessary so that local governments can predict exposure for both insurance and budgetary purposes." *Marcas*, 415 Md. at 686 (quoting Governor's Legis. Off., Off. of the Governor, Briefing Paper H.B. 253/S.B. 237, 397th Gen. Assemb., Reg. Sess. at 9-10 (1987)).

We also observed that "the LGTCA was enacted at a time when local governments were having problems purchasing insurance," which caused us to "conclude that the General Assembly intended that courts would use the insurance industry's definitions of

15

'individual claim' and 'same occurrence' when applying" the LGTCA. *Marcas*, 415 Md. at 687. We therefore looked to the insurance industry's definition of the term "occurrence." *Id.* In doing so, we quoted favorably the Supreme Court of New Mexico's opinion in *Folz v. New Mexico*, 797 P.2d 246 (N.M. 1990), in which that court explained its reasoning for looking to insurance coverage cases to determine what constituted a "single occurrence" under the New Mexico Tort Claims Act. *Marcas*, 415 Md. at 687-88. We also noted that in *CSX Transportation, Inc. v. Continental Insurance Co.*, 343 Md. 216 (1996), we had recognized that "[b]y far the vast majority of courts that have considered the [meaning of the term "single occurrence"] view it from the perspective of causation, 'by referring to the cause or causes of the damage [or injury] and not to the number of injuries or claims.'" *Marcas*, 415 Md. at 690 (third alteration in *Marcas*) (quoting *CSX Transp.*, 343 Md. at 233-34).

Viewing that test as consistent with our statutory analysis of the LGTCA, we adopted the "cause" test as "applicable to the determination of what does, or does not, constitute the 'same occurrence' as that term is used in" the LGTCA. *Marcas*, 415 Md. at 692. We held that the proper inquiry is focused on the cause or causes of the damage or injury, not the effects. *Id.* At the same time, we clarified that "continuous and repeated acts of negligence may constitute the 'same occurrence.'" *Id.* As support for that definition, we quoted a treatise that, in turn, cited the *Folz* decision for the proposition that the term "single occurrence" "refer[red] to all harm that, although proximately caused by a particular risk arising from the concurrent operation of one or more successive acts of

16

negligence, was triggered by [one] particular event." *Marcas*, 415 Md. at 690 (quoting 1

*Civil Actions Against State and Local Government: Its Divisions, Agencies, and Officers*

§ 6.14 at 6-110 (2d ed. 2002)).

We determined that under the LGTCA, if a local government acts negligently in maintaining a landfill, "and that negligence is the proximate cause of contamination to one or more adjacent properties, each adjacent owner's claim for money damages would arise out of the 'same occurrence,' even if the local government was negligent (1) in several different ways, and (2) for an extended period of time." *Marcas*, 415 Md. at 689-90. Ultimately, we concluded that "the numerous negligent acts alleged in Appellee's complaint[,] all of which occurred at the [landfill], . . . were so uniform, routinized and regularized, and occurred at such steady and frequent intervals, that they merged into one continuous 'same occurrence' under" the LGTCA. *Id.* at 695.

For largely the same reasons set forth in *Marcas*, we will apply the "cause" test in determining the number of incidents or occurrences under the MTCA. Like the cap on exposure of local governments in the LGTCA, the monetary limitation on the State's waiver of sovereign immunity in the MTCA limits the State's potential liability and makes that liability more predictable.[7] *Id.* at 686. The cause test is also consistent with the

___

[7] Although the LGTCA and the MTCA share origins related to insurance and both limit the amount of liability that can be imposed, they emerge from different starting points. At common law, local governments generally did not enjoy sovereign immunity from tort claims and the governmental immunity they enjoyed was substantially narrower. *Hous. Auth. of Baltimore City v. Bennett*, 359 Md. 356, 358-59 (2000). The limitation on liability under the LGTCA arose in part because local governments were having difficulty

statutory and regulatory language of the MTCA. Section 12-104(a)(2)(i) of the State Government Article provides that "the liability of the State and its units may not exceed $400,000 to a single claimant for injuries arising from a single incident or occurrence." The limit on the State's waiver is thus tied not to the number of injuries that are sustained, but to all injuries sustained as the result of "a single incident or occurrence." Similarly, the definition of "incident" in COMAR emphasizes the act of negligence giving rise to liability, rather than the effect of such an act: "an act or omission of State personnel that constitutes an alleged tort under the [MTCA] and is alleged to have caused injury, loss, or damage to person or property by reason of a single occurrence." COMAR 25.02.01.02B(3).

We will now explore how the cause test has been applied in related circumstances, including in both the insurance context, where the test first emerged, and by other jurisdictions in the tort claims act context.

---

procuring insurance to cover uncapped liability. *Marcas*, 415 Md. at 687. The State, on the other hand, had no need for insurance because it enjoyed sovereign immunity from tort suits, as discussed above. But in enacting a partial waiver of sovereign immunity to allow recovery in tort, the State established the MTCA in the model of an insurance program to manage the liability it was assuming. *See* Md. Code Ann., State Fin. & Proc. § 9-105(c) (2021 Repl.) ("[T]he Treasurer shall provide sufficient self-insurance, purchased insurance, or both to cover the liability of the State and its units and personnel under the [MTCA]."); State Gov't § 12-104(c) (authorizing the Treasurer to pay MTCA claims with the State Insurance Trust Fund). The LGTCA thus imposes a cap on what was, at least in part, previously uncapped liability for local governments, while the MTCA allows limited recovery from the State where none was previously available.

## 2. Cases Applying the Cause Test in the Insurance Context

Under the cause test, where a single negligent act proximately causes multiple injuries, courts have found a single occurrence, incident, or accident.[8] Thus, in the leading case of *St. Paul-Mercury Indemnity Co. v. Rutland*, the United States Court of Appeals for the Fifth Circuit determined that there was a single "accident" when a truck driven by an employee of the insured struck a freight train, causing it to derail and resulting in damage to 16 different freight cars with 14 different owners, as well as damage to products contained in those freight cars and to the railway's roadbed. 225 F.2d 689, 690-91, 693 (5th Cir. 1955). The court observed that when people speak of an "accident," they are usually "referring to a single, sudden, unintentional occurrence[,]" and that they ordinarily use that term "to describe the event, no matter how many persons or things are involved." *Id.* at 691 (emphasis omitted).

Courts applying the cause test also generally have found a single occurrence, incident, or accident when multiple tortious acts are causally related, are related in time or

---

[8] Except where insurance policies define them differently, courts generally treat the terms accident, incident, and occurrence as synonyms for these purposes. *See, e.g.*, *Hawaiian Ins. & Guar. Co., Ltd. v. Blanco*, 804 P.2d 876, 879 (Haw. 1990), *overruled on other grounds by Dairy Rd. Partners v. Island Ins. Co.*, 992 P.2d 93 (Haw. 2000) (the insurance policy defined "occurrence" as "an accident causing bodily injury" and the court referred to the events in question as "the incident"); *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 740 (Mich. 1989) (determining whether the "fighting incident" was an "occurrence," which the policy defined as "accident"); *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 270 (Fla. 2003) (same); *see also City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1056 (8th Cir. 1979) (noting that although "occurrence" is usually broader than "accident," in the context of the insurance policy at issue the two words were synonymous).

19

sequence, or lead to a single, ongoing injury. An influential example is the decision of the United States Court of Appeals for the Third Circuit in *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3d Cir. 1982). There, Liberty Mutual was found to have engaged in sex discrimination against hundreds of employees over the course of several years due to longstanding employment policies. *Id.* at 58. In resolving a dispute over coverage for those claims, the Third Circuit applied the "general rule . . . that an occurrence is determined by the cause or causes of the resulting injury." *Id.* at 61. Despite the several injuries to hundreds of plaintiffs over several years, the court held that there was a single occurrence because all the injuries "resulted from a common source: Liberty's discriminatory employment policies." *Id.* "As long as the injuries stem from one proximate cause there is a single occurrence." *Id.*

In *Flemming v. Air Sunshine, Inc.*, the plaintiff alleged that four separate instances of negligence resulted in the death of her husband, who had survived a plane accident but then drowned when the plane sank. 311 F.3d 282, 284 (3d Cir. 2002). The plaintiff alleged negligence in: (1) the crash and operation of the airplane; (2) "the failure to provide a pre-flight safety briefing"; (3) "the failure to notify passengers of the impending crash" and "provide safety instructions"; and (4) "the failure to provide [the victim] with a life vest" after the crash. *Id.* at 286. The court stated that the relevant question in applying the cause test is whether there "was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Id.* at 295 (quoting *Appalachian Ins.*, 676 F.2d at 61). Even assuming that four separate negligent acts occurred, applying the insurance

policy's definition of "occurrence,"[9] the court held that the acts were not "independent from the crash itself[,]" and that there was one occurrence: the crash. *Flemming*, 311 F.3d at 295; *see also Welter v. Singer*, 376 N.W.2d 84, 85-87 (Wis. Ct. App. 1985) (holding that a car's four separate movements running over a bicyclist constituted "a single, uninterrupted cause" of the cyclist's injuries and, therefore, one accident or occurrence).

On the other hand, courts applying the cause test have found multiple occurrences when independent tortious actions that are not causally related were the proximate causes of separately identifiable injury or damages. In *United States Fire Insurance Co. v. Safeco Insurance Co.*, for example, an insured facility suffered water damage when water entered through a leaky roof. 444 So. 2d 844, 845 (Ala. 1984). It then suffered additional water intrusion several months later when the company hired to repair the roof failed to effectively cover it while performing repairs, resulting in additional damage. *Id.* The court concluded that the repair company's negligence "was a separate, intervening cause" of the insured's injuries, and therefore gave rise to a second occurrence under the policy. *Id.* at 847.

Similarly, in *Maurice Pincoffs Co. v. St. Paul Fire & Marine Insurance Co.*, the Fifth Circuit found multiple occurrences where a supplier of bird seed was sued by eight stores to which it had sold seed that had been contaminated before the supplier received it.

---

[9] The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage during the policy period neither expected or intended from the standpoint of the [i]nsured . . . ." *Flemming*, 311 F.3d at 295.

447 F.2d 204, 205 (5th Cir. 1971). The Fifth Circuit, applying Texas law, concluded that an occurrence, for purposes of the policy covering the supplier, must be "the occurrence of the events or incidents for which [the insured] is liable[,]" i.e., the sales to the eight stores, not the contamination caused by the entity that sold the seed to the supplier. *Id.* at 206; *see also Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451, 457-58 (Ariz. 1987) (concluding that there were two occurrences where two different doctors on different days independently failed to consult spinal x-rays in connection with different appointments, each of which caused different injuries); *Med. Assurance of Ind. v. McCarty*, 808 N.E.2d 737, 746 (Ind. Ct. App. 2004) (concluding that two separate acts of negligence by the same doctor—ineffectually suturing the patient's colon and leaving a clip attached to her ureter—constituted two occurrences where the two negligent acts caused two distinct injuries).

### 3. *Cases Applying the Cause Test in the Governmental Tort Claims Act Context*[10]

Several states have applied the cause test in determining how many incidents or occurrences are implicated in tort claims brought under governmental tort claims acts. In

---

[10] Although the origins of the cause test lie in insurance law, it has been applied in other jurisdictions in the context of governmental tort claims act cases where the applicable statutes share features of insurance programs and employ similar language. It is therefore reasonable to look to insurance caselaw to shed light on the meaning of terms like "incident" and "occurrence" as used in the MTCA.

There are, however, important differences between the interpretation of insurance contracts and the interpretation of limited waivers of sovereign immunity. Notably, most states apply rules of construction of insurance contracts that construe at least ambiguous terms against insurers. *See Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 481-83 (2015)

*Folz*, a case we cited with approval in *Marcas*, the Supreme Court of New Mexico applied a version of the cause test in determining whether a $500,000 per occurrence limit in the State's tort claims act applied when a runaway truck engaged in "successive and separate collisions with multiple vehicles[.]" 797 P.2d 246, 249 (N.M. 1990). After a jury trial, the court entered a judgment against the State for $651,687. *Id.* at 250. In applying the tort claims act limit, the court determined that where "multiple negligent acts or omissions of the state . . . antedate the event giving rise to liability[,] . . . the term 'single occurrence' refers to all harm that, although proximately caused by a particular risk arising from the concurrent operation of one or more successive acts or omissions on the part of a governmental entity, was triggered by a particular event giving rise to liability." *Id.* at 252. In the case before it, there was a single occurrence because "all the injuries (1) lay within a singular risk of harm created by the concurrent operation of the Department's negligent acts and omissions, and (2) were triggered by a discrete event—the runaway truck." *Id.* (footnote omitted). Thus, although the Department committed at least two negligent acts, those acts combined to proximately cause a single "indivisible harm to each of multiple

---

(explaining that "[s]ome of our sister states" construe insurance policies against insurers "as a matter of course," and that Maryland courts construe "ambiguous language" in such policies against the insurer). By contrast, "waivers of sovereign immunity . . . are strictly construed in favor of the State." *Brawner Builders, Inc. v. State Highway Admin.*, 476 Md. 15, 32 (2021). Thus, while any ambiguities in insurance contracts concerning the definition of terms like "incident" or "occurrence" will be construed in most states against the insurer, any similar ambiguity in a statutory waiver of immunity must be construed in favor of the State.

persons facing the singular risk of a runaway truck." *Id.* Therefore, there was one occurrence, and the judgment against the State was reduced accordingly. *Id.* at 254.

In *Burley v. Clackamas County*, Oregon's intermediate appellate court considered the number of occurrences under its state tort claims act in a whistleblower retaliation claim arising "out of several years of whistleblowing activity and more than a year of retaliatory conduct." 496 P.3d 652, 653 (Or. Ct. App. 2021). The plaintiff asserted that such conduct was not "a single accident or occurrence." *Id.* The court disagreed because, under Oregon law, "accident or occurrence," for purposes of the tort claims act, "may be read as if it said 'the tort.'" *Id.* (quoting *Dowers Farms, Inc. v. Lake County*, 607 P.2d 1361, 1366 (Ore. 1980)). Because the jury found a single tort of whistleblower retaliation, there was a single accident or occurrence, and the award was correctly capped. *Burley*, 496 P.3d at 652.

In *Texas Department of Mental Health and Mental Retardation v. Petty*, a Texas intermediate appellate court addressed the number of occurrences implicated under the Texas Tort Claims Act in a case of a woman who had been committed to a state hospital and spent decades in state institutions. 817 S.W.2d 707, 710-11 (Tex. Ct. App. 1991), *judgment aff'd*, 848 S.W.2d 680 (Tex. 1992). The plaintiff "alleged numerous misdeeds and omissions on the part of hospital personnel" over the course of decades resulting in her extended wrongful confinement. *Id.* at 711. Although the jury found 12 different acts of negligence, the court found that she "alleged a single, ongoing, indivisible injury . . . resulting from the totality and orchestration of numerous negligent acts and omissions on the part of Department employees over many years." *Id.* at 720. To recover for multiple

24

occurrences of negligence, the court held, the plaintiff would have been "required to present evidence in such a fashion as would allow the jury to link particular incidents of [negligence] to distinct injuries and submit jury questions to elicit findings attributing particular injuries to specific acts of negligence." *Id.* Because she did not do that, she could recover for only a single occurrence. *Id.*

In *Chastain v. AnMed Health Foundation*, a plaintiff sued a hospital for negligence while she was in the care of six defendant nurses for more than eight months. 694 S.E.2d 541, 542 (S.C. 2010). She alleged that her claim was not subject to the $300,000 per occurrence limit under the South Carolina Tort Claims Act—which applied to suits against charitable organizations, including the hospital—because she alleged multiple instances of negligence contributing to her injuries. *Id.* at 542-43. The court disagreed, observing that "[j]ust as in any tort action, a . . . plaintiff bears the burden of proof." *Id.* at 543. Where a plaintiff "alleges multiple occurrences, that is, that there was more than one single act of negligence from which proximately flowed an unfolding sequence of events, [the plaintiff] bears the burden of proving each occurrence." *Id.* at 543-44. In that case, however, "the jury was never instructed on the definition of occurrence nor was it asked to determine whether there was more than one occurrence[.]" *Id.* at 544. Accordingly, the court held, the trial judge correctly reduced the "verdict to reflect a single occurrence."[11] *Id.*

---

[11] Although most state courts have applied a version of the cause test in determining the number of occurrences for purposes of a governmental tort claims act, the Supreme Court of Florida took a different approach, adopting an "event" test in *Barnett v. Department of Financial Services*, 303 So. 3d 508 (Fla. 2020) (per curiam). There, the

**B.     Application**

Based on our review of the plain language of the MTCA, our decision in *Marcas*, and our survey of cases from other jurisdictions, we distill certain principles applicable to determining the number of incidents or occurrences giving rise to a plaintiff's injuries under the MTCA.

First, where the plaintiff proves only a single negligent act or omission that proximately causes a plaintiff's injuries or damages, there is only one incident or occurrence under the MTCA.

Second, where a plaintiff proves multiple negligent acts or omissions that proximately caused a plaintiff's injuries or damages, there still may be a single incident or occurrence under the MTCA if the acts or omissions constitute "continuous and repeated

court addressed whether a single "incident or occurrence" limit would apply to "multiple claims of injury against a state agency or actor aris[ing] from one overall injury-causing event[.]" *Id.* at 510 (capitalization omitted). The underlying facts involved an individual who shot his estranged wife and five children, severely wounding one and killing the others. *Id.* In engaging in its analysis, the court began by applying two principles: (1) "Statutes that alter the common law are narrowly construed"; and (2) "Waivers of sovereign immunity must be construed narrowly in favor of the government." *Id.* at 513 (quoting *Hardee County v. FINR II, Inc.*, 221 So. 3d 1162, 1165 (Fla. 2017)).

After engaging in a thorough textual analysis of the Florida statutory scheme, the court concluded that "incident or occurrence" in the relevant section had to refer to "the immediate injury-causing event," and not the negligent acts or omissions that caused that event. *Id.* at 515. Ultimately, the court concluded that "[t]he phrase 'same incident or occurrence' is most reasonably understood as referring to the . . . injury-causing[] event as a whole, not to the smaller segments of time and action that make up the [event] against each individual victim, because this is the way that we commonly talk about this type of tragic occurrence—as a single event with multiple victims." *Id.* at 517. Accordingly, the shooting of the six individuals constituted a single incident or occurrence under Florida law. *Id.*

26

acts of negligence," *Marcas*, 415 Md. at 692, or if all such negligent acts are causally related, give rise to the same risk, or act concurrently to produce the same injury, *see Folz*, 797 P.2d at 252 (finding one occurrence where multiple injuries "lay within a singular risk of harm created by the concurrent operation of the Department's negligent acts and omissions"); *Chastain*, 694 S.E.2d at 543-44 (concluding that to establish multiple occurrences, a plaintiff must prove "that there was more than one single act of negligence from which proximately flowed an unfolding sequence of events").

Third, where a plaintiff proves that multiple negligent acts or omissions proximately caused the plaintiff's injuries or damages, there will be multiple incidents or occurrences if the acts or omissions are not causally related, introduce different risks, and act separately to produce injury or damages. *See U.S. Fire Ins. Co.*, 444 So. 2d at 847; *Maurice Pincoffs Co.*, 447 F.2d at 205-06; *cf. Folz*, 797 P.2d at 252-53.

Fourth, as with any other case, it is the plaintiff's burden to prove to the trier of fact all elements of their claim. *See, e.g.*, *Pittway Corp. v. Collins*, 409 Md. 218, 253 (2009) (noting that the determination of proximate cause is a factual question for the jury unless the evidence suggests only one possible logical conclusion). Thus, in a case tried to a jury, a prerequisite to a claim for multiple incidents or occurrences under the MTCA is a jury verdict finding that multiple negligent acts or omissions proximately caused a plaintiff's injuries or damages. *See Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639, 643 n.4 (W. Va. 1985) (rejecting an insured's claim of two "occurrences" under an automobile insurance policy based on two alleged instances of negligence where one of them was never

27

presented to the jury);[12] *Chastain*, 694 S.E.2d at 543-44 (If a plaintiff "alleges multiple occurrences, that is, that there was more than one single act of negligence from which proximately flowed an unfolding sequence of events, [the plaintiff] bears the burden of proving each occurrence."). And, to enable the court to apply the MTCA cap on the State's limited waiver of sovereign immunity, the jury should also identify the damages flowing separately from each negligent act that proximately causes injury. *See Petty*, 817 S.W.2d at 720 (holding that the plaintiff could not recover for multiple occurrences, even though the jury found multiple acts of negligence, because the jury did not make "findings attributing particular injuries to specific acts of negligence").

Following a jury verdict in a case to which the MTCA applies, if the State believes the verdict exceeds the limits on its waiver of sovereign immunity under the MTCA, it may file a motion for remittitur. If the plaintiff, in response to that motion, then contends that the verdict supports more than one set of limits based on more than one incident or

---

[12] In *Shamblin*, a vehicle owned by an insured business crashed into a truck and another vehicle while attempting to pass the truck. 332 S.E.2d at 641. In pursuing coverage for two "occurrences," the insured business claimed two instances of negligence, by the driver of the vehicle that crashed and by the driver of a second vehicle owned by the business, who told the first driver it was safe to pass the truck. *Id.* The Supreme Court of Appeals of West Virginia concluded that "[w]hether such communication was negligence and contributed proximately to the accident would be questions of fact for the jury, and the record does not contain the answers to these questions. Thus, the foundation of the appellant's argument that there were two 'occurrences' due to two negligent acts of two of the appellant's drivers is not upon solid ground." *Id.* at 643 n.4 (internal citation omitted). Applying the event test, the court also concluded that even assuming two negligent acts, "there was, at the most, concurrent negligence which was the proximate cause of one event, for which event liability was incurred by the appellant." *Id.*

28

occurrence, the trial court should assess that contention by applying the cause test, as discussed in this opinion, based on the jury's factual findings.

The State argues that the number of incidents or occurrences is itself a question for the jury. In doing so, the State relies on our observation in *CSX Transportation, Inc. v. Continental Insurance Co.*, 343 Md. 216, 223 (1996), an insurance case, that "what constitutes an occurrence under the various insurance policies and the number of occurrences" were "factual issues" that were tried to the jury in that case. But our statement in *CSX Transportation* was a description of what had transpired in that case, not a holding. *See id.* Although at least one jurisdiction has taken that approach, *see Chastain*, 694 S.E.2d at 543-44, in the context of tort claims acts, we conclude that the better answer is that the number of incidents or occurrences is a matter for the court, but that the court's decision must be based on a factual predicate established by the jury's verdict. A court may find multiple incidents or occurrences only if the jury has first found multiple negligent acts or omissions each proximately causing specific injuries or damages. Provided that the jury established those factual prerequisites, whether the defendant's tortious acts or omissions constitute one or multiple occurrences is a legal question for the court.

Here, Mr. Young claims an entitlement to two incidents or occurrences based on two separate alleged negligent acts by Sgt. Wright: (1) re-opening the cell doors, which allowed Mr. Young's attackers to enter his cell; and (2) not opening the locked grille to

29

rescue Mr. Young before the attack in the recreation hall bathroom.[13]  But whether Sgt. Wright engaged in two negligent acts or omissions that proximately caused injury to Mr. Young would have been a question for the jury.  Because no one asked the jury that question, the jury did not answer it.  Instead, the jury found only that "Officer Jeremy Wright acted with negligence towards Plaintiff Michael Young, causing him mental and/or physical injury[.]"  That finding did not establish the necessary factual predicate for a court to conclude there were multiple incidents or occurrences.

Although factual determinations may be reached by a court when "the facts and circumstances only permit one inference with regard to the issue presented," *Est. of Blair v. Austin*, 469 Md. 1, 17 (2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fund for Animals, Inc.*, 451 Md. 431, 457 (2017)), that is not the case here.  Sgt. Wright's alleged second act of negligence followed the first by only a matter of minutes.  A finder of fact could reasonably have concluded that the second attack was part of the same causally related sequence of events, rather than an intervening act that broke the causal chain, especially if that finder of fact believed Mr. Young's contention that his maltreatment at the prison was generally in retaliation for his earlier sexual harassment report.  And although the record contains nothing to prove whether the attackers in the recreation hall

---

[13] Mr. Young does not allege two incidents or occurrences based on the jury finding separate acts of negligence by Sgt. Wright and Warden Dovey, presumably in recognition that those acts were concurrent causes of the same injuries.

bathroom and in the cell were the same individuals,[14] common sense would suggest a connection between two attacks that occurred in such close temporal and geographic proximity to each other. Moreover, even if we were to assume that Sgt. Wright engaged in two separate negligent acts that each proximately caused injury to Mr. Young, the jury was not asked how it would allocate the damages between the two acts. The evidence certainly does not suggest an equal allocation, which seems to be the approach underlying Mr. Young's argument that he is entitled to $400,000 in damages for each act. The attack in the cell involved knives and a combination lock tied in a sock, and so seems to have resulted in all seventeen of Mr. Young's stab wounds, whereas the attack in the recreation hall involved no weapons.

Mr. Young makes several counterarguments, but none are availing. First, in response to the State's contention that the number of incidents or occurrences is a question for the jury, he argues that trial courts, not juries, routinely apply the statutory limitation on liability under the MTCA after trial. We agree, but, as discussed above, courts can find multiple incidents or occurrences only if the jury's verdict establishes the factual predicate for doing so. Notably, in none of the three cases on which Mr. Young relies did the trial courts purport to decide the factual predicate for determining the number of instances or

---

[14] In his testimony, Mr. Young could not say whether the attackers were the same or different. In his briefing to this Court, Mr. Young asserts that the fact that the attackers in the cell had weapons and those in the recreation hall bathroom did not suggests that they were different. But it seems just as plausible that the attackers in the cell abandoned or stashed their weapons before venturing to another area of the tier. In any event, that is not a matter we can resolve as a matter of law.

31

occurrences. To the contrary, in all three, the court applied the MTCA based on a single incident or occurrence, which is all that the respective jury awards could support. *See Rodriguez v. Cooper*, 458 Md. 425, 433 (2018) (noting that the circuit court ruled that there were three claimants and each plaintiff could recover the maximum amount available for a single incident or occurrence under the MTCA); *Espina v. Jackson*, 442 Md. 311, 319 (2015) (observing that the trial court appropriately reduced the jury award per the MTCA cap based on a single incident or occurrence); *State v. Wallace*, Nos. 0164 & 0642, Sept. Term, 2021, 2022 WL 2282705, at \*21 (Md. App. Ct. June 23, 2022) (directing the trial court to reduce the judgment from $25 million to $200,000—the statutory cap per incident or occurrence at the time—where there was one incident or occurrence).

Second, Mr. Young contends that decisions by juries concerning the number of incidents or occurrences will be uninformed because the jurors will not know why they are being asked to make that decision. Although that might be true if we asked jurors to reach a direct conclusion about the number of incidents or occurrences, that is not our holding. Moreover, jurors are asked regularly to make factual determinations without necessarily being informed of the consequences. Indeed, in this case, the jury was asked to decide whether the individual defendants acted with malice or gross negligence without being informed that the answer would determine whether the State or the individual defendants would bear liability, and whether that liability would be limited.

Third, Mr. Young argues that the defendants are estopped from arguing on appeal that more questions should have been presented to the jury because the State's counsel at

32

trial argued that the verdict sheet should contain only "a single box of damages." As an initial matter, judicial estoppel applies only when a court has accepted a party's previous, inconsistent position. *Donlon v. Montgomery County Pub. Schs.*, 460 Md. 62, 104 (2018). Here, the trial court rejected the State's proposed verdict sheet. More importantly, the State's argument at trial had nothing to do with the issue on appeal. The State argued against lines for individual damages based on whether the defendants were found to have acted with negligence, gross negligence, or malice. There was no discussion concerning whether the jury should be asked about multiple acts of negligence, the number of incidents or occurrences, or any associated damages.

Fourth, Mr. Young contends that because sovereign immunity is an affirmative defense, it was the State's burden to negate multiple incidents or occurrences, rather than his burden to prove them. He is correct that, under Maryland law, sovereign immunity is an affirmative defense. *See Lizzi v. Washington Metro. Area Transit Auth.*, 156 Md. App. 1, 5 (2003) (identifying "the defense[] of sovereign immunity" as one of the "affirmative defenses" raised). And, ordinarily, "[w]hen a defendant asserts an affirmative defense, the defendant . . . assumes the burden of production and the burden of persuasion as to the elements of that defense." *Bd. of Trs., Cmty. Coll. of Baltimore County v. Patient First Corp.*, 444 Md. 452, 470 (2015). However, in conflating the defense of sovereign immunity with the State's assertion that that defense was only partially waived, Mr. Young

gets the role of the MTCA backwards. With respect to the State, the MTCA is not a defense; it is an exception to the defense of sovereign immunity.[15, 16]

The State raised its sovereign immunity defense in its answer to the complaint and in its post-trial motion, in which it asked the court to reduce the verdict to conform to the limitation on its waiver of sovereign immunity. Because the MTCA is an exception to the State's defense of sovereign immunity, the plaintiff has the burden of proving its application and scope. *Cf. Newell v. Richards*, 323 Md. 717, 726 (1991) (discussing with approval a decision concluding that a plaintiff should have the burden to prove an exception to a statute of limitations defense); *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 187 (1997) (identifying the plaintiff's burden to prove the fraud exception to the statute of limitations defense); *see also Fairley v. Dep't of Corrs.*, 871 N.W.2d 129, 135 (Mich. 2015) ("[D]efendants are presumed to be entitled to governmental immunity, and the burden is on plaintiff to prove that one of the exceptions to governmental immunity is applicable."); *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 647 (Tenn. 2008) ("When, however, a defendant establishes an affirmative defense, the burden shifts to the plaintiff to

---

[15] By contrast, the immunity provided to State personnel by the MTCA *is* an affirmative defense for those State personnel because that immunity is established only pursuant to the MTCA.

[16] Notably, neither the State nor its attorneys may waive the limitation on the State's partial waiver of sovereign immunity. Because the General Assembly waived the State's sovereign immunity only up to $400,000 per claimant for a single incident or occurrence, the State maintains sovereign immunity for all claims in excess of that amount. Only the General Assembly can extend the waiver above $400,000. *Proctor v. Washington Metro. Area Trans. Auth.*, 412 Md. 691, 709 (2010).

demonstrate a recognized exception."); Daniel A. Morris, *Pleading Defense of Limitations*, Federal Tort Claims § 3:3 n.3 (last updated August 2025) (citing *McCall ex rel. Est. of Bess v. United States*, 310 F.3d 984 (7th Cir. 2002)) ("[A]lthough the statute of limitations is an affirmative defense, the plaintiff has the burden of establishing an exception to the two-year administrative statute of limitations applicable to the [Federal Tort Claims Act]."); 35A Am. Jur. 2d Federal Tort Claims Act § 193 ("Plaintiffs bear the burden of showing that the discretionary function exception to the [Federal Tort Claims Act] waiver of sovereign immunity does not apply."). To establish a claim against the State under the MTCA, a plaintiff thus must prove the existence of any disputed factors necessary to unlock the State's limited waiver of sovereign immunity, including simple negligence by State personnel in the course of their public duties. *See* Cts. & Jud. Proc. § 5-522(b). If a plaintiff contends that the MTCA's exception to the State's sovereign immunity defense extends to multiple incidents or occurrences, the plaintiff carries the burden of establishing that as well.

Here, the jury found that Sgt. Wright and Warden Dovey negligently caused injury to Mr. Young and that they did not act with gross negligence or malice. And it was apparently undisputed that both individuals were acting within the scope of their public duties and that the notice element of the MTCA was satisfied. That left the State responsible to pay the judgment, but only up to the limit provided under the MTCA on the

35

State's waiver of sovereign immunity. To access multiple sets of limits under the MTCA, Mr. Young was required to establish multiple incidents or occurrences. He did not do so.[17]

Lastly, Mr. Young contends that requiring the jury to determine the number of incidents or occurrences, and then to allocate damages if it finds multiple incidents or occurrences, would lead to an overly complicated jury verdict sheet. Although adding questions will increase the complexity of some verdict sheets, we do not think it is beyond the capacity of counsel and trial judges to design special verdict sheets that jurors can comprehend and that will clearly reflect their findings when cases involve a legitimate, timely raised dispute about the number of incidents or occurrences. *See also CSX Transp.*, 343 Md. at 228-29 (discussing the use of a written interrogatory where the jury found that at least 20,235 separate occurrences took place). In that way, juries can be asked whether each of multiple alleged acts or omissions was negligent, grossly negligent, or malicious; whether each act or omission proximately caused damages to the plaintiff; whether the act or omission was causally related to the other acts or omissions at issue; and the amount of

---

[17] The parties spend a significant amount of ink debating whether Mr. Young timely placed the State on notice of his contention that there were two incidents or occurrences through: (1) Sgt. Wright's and Warden Dovey's first-hand knowledge of what transpired; (2) the factual allegations of the complaint; and (3) the evidence elicited at trial. Given our conclusion that Mr. Young bore the burden of placing before the jury the issue of whether the defendants engaged in multiple negligent acts or omissions that were non-concurrent proximate causes of his injuries or damages, and that he failed to fulfill that burden, we need not resolve whether he also failed to provide the State adequate notice of his intent to assert that claim.

damages attributable to that act or omission, if any, that are distinct from damages that are

attributable to any concurrent act or omission.[18]

In sum, in a case tried before a jury, a court may determine there are multiple

incidents or occurrences for purposes of applying the limitation on the State's limited

waiver of sovereign immunity under the MTCA only if the jury has expressly or necessarily

found multiple negligent acts or omissions that were each the proximate cause of specific

injuries or damages alleged by the plaintiff. Here, the jury made no such finding, and so

---

[18] Relying on an issue that was first raised by the Court at oral argument and later addressed in supplemental briefing, Mr. Young also argues that if the number of incidents or occurrences should have been presented to a jury and was not, Maryland Rule 2-522(b)(2)(B) allows the trial court to apply the MTCA limitation on liability post-trial. Even assuming that argument had been timely raised, we disagree. Maryland Rule 2-522(b)(2) provides:

> (A) Court May Require. The court may require a jury to return a verdict in the form of written findings upon specific issues.
>
> . . .
>
> (B) Omission of Issue. If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered.

Rule 2-522(b)(2) does not absolve the plaintiff of the obligation to place the essential elements of the plaintiff's claim before the jury. Moreover, Rule 2-522(b)(2) applies only to issues "raised by the pleadings or by the evidence." Here, Mr. Young's post-trial claim of multiple incidents or occurrences was not raised by the pleadings or the evidence. It could potentially have been *supported* by the evidence, but it was not *raised* by the evidence.

the circuit court erred in not reducing the verdict in favor of Mr. Young to $400,000 to reflect a single incident or occurrence.

## IV. THE *LONGTIN* PATTERN-OR-PRACTICE CLAIM

The final issue presented is whether a plaintiff may bring a claim against the State for a pattern or practice of engaging in or allowing unconstitutional conduct under this Court's decision in *Prince George's County v. Longtin*, 419 Md. 450 (2011). In *Longtin*, this Court held that such a claim may be brought against a county. *Id.* at 500. Before the Appellate Court, the parties in this case disputed whether such a claim may lie against the State. The court sided with Mr. Young on that threshold issue. *Young*, 265 Md. App. at 19. But the Appellate Court also concluded that Mr. Young had failed to present sufficient evidence to prevail on that claim. *Id.* at 31. Accordingly, the court held that the circuit court had "erred in denying the State's motion for judgment notwithstanding the verdict on the *Longtin* claim." *Id.*

Before this Court, the State sought review of the Appellate Court's determination that *Longtin* pattern-or-practice claims may be brought against the State. However, Mr. Young has not sought review of the Appellate Court's determination that he did not present sufficient evidence to support such a claim. Because the Appellate Court's sufficiency decision is now final as to Mr. Young's *Longtin* claim, and he can seek no further review of it, the State's appeal is moot as to that claim. *See County Council of Prince George's County v. Robin Dale Land LLC*, 491 Md. 105, 144 (2025) ("A case is moot when there is no longer an existing controversy when the case comes before the Court

38

or when there is no longer an effective remedy the Court could grant." (quoting *Suter v. Stuckey*, 402 Md. 211, 219 (2007))).

The State argues that the public interest exception to the mootness doctrine applies here because addressing this issue will help future litigants and trial courts determine the proper scope of a claim. We are not persuaded. That exception applies only "when the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest." *Wilson v. Tanglewood Venture, LP*, 492 Md. 590, 600 (2025) (citation modified) (quoting *Arrington v. Dep't of Human Res.*, 402 Md. 79, 91 (2007)). Such cases are "rare," *Coburn v. Coburn*, 342 Md. 244, 250 (1996), and must implicate "a matter of important public policy[,]" such as "protection from domestic violence[,]" *Suter*, 402 Md. at 220-21, issues related to an indigent individual's eligibility for representation by a public defender, *Off. of Pub. Def. v. State*, 413 Md. 411, 423-24 (2010), or systemic incarceration of fathers who failed to pay child support, *Arrington*, 402 Md. at 91-92. The issue of whether *Longtin* claims apply to the State, although important, is not a matter of such urgency as to justify issuance of an advisory opinion on a moot issue, "a long forbidden practice in this State." *Pizza di Joey, LLC v. Mayor & City Council of Baltimore*, 470 Md. 308, 340 (2020) (quoting *Hickory Point P'ship v. Anne Arundel County*, 316 Md. 118, 129-30 (1989)).

Nonetheless, rather than allow Mr. Young's concession of the ultimate merits of his *Longtin* claim to effectively insulate from this Court's review the determination that such claims may be brought against the State, we will vacate the portion of the Appellate Court's

opinion that addressed that issue.  *See Young*, 265 Md. App. at 19-27.  The Appellate Court's decision that Mr. Young failed to present sufficient evidence is fully and independently dispositive of that claim.  *See Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 46 (2008) (noting that appellate courts should "decide only the questions of law integral to the necessary holdings" in a case).

## CONCLUSION

For these reasons, we hold that:  (1) the circuit court erred in entering judgment against the individual defendants; and (2) the circuit court erred in not reducing the judgment against the State to $400,000, reflecting a single incident or occurrence.  We will therefore reverse the Appellate Court's opinion affirming the circuit court on those points.  We also vacate the portion of the Appellate Court's opinion concluding that a *Longtin* pattern-or-practice claim is viable against the State of Maryland.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED IN PART AND VACATED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT WITH INSTRUCTIONS FOR THAT COURT TO ENTER JUDGMENT IN FAVOR OF THE RESPONDENT AGAINST ONLY THE STATE OF MARYLAND IN THE AMOUNT OF $400,000.  COSTS IN THIS COURT AND IN THE APPELLATE COURT TO BE PAID BY RESPONDENT.**